454 A.2d 567

**COMMONWEALTH of Pennsylvania**

v.

**Richard MARCH, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1982.

Filed Dec. 23, 1982.

Norman Krumenacker, Jr., Ebenburg, for appellant.

Timothy P. Creany, Assistant District Attorney, Ebenburg, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

On September 26, 1980, the appellant, Richard March, was convicted by a jury of criminal homicide and criminal conspiracy as a result of the fatal shooting of Craig Mickens which occurred in the City of Johnstown, Cambria County, Pennsylvania, March 29, 1980. Written motions for a new trial and in arrest of judgment were denied, and on June 9, 1981, the appellant was sentenced to life imprisonment in a State Correctional Institution. This appeal from that judgment of sentence followed.

During the late evening hours of March 28, 1980 and the early morning hours of March 29, 1980, Craig Mickens was dancing and socializing with friends at Rod's Pub in the Prospect section of Johnstown. Upon completing a dance with his girlfriend, Craig walked over to the pool table and was accosted by Mark March, the appellant's brother. No witnesses could attest to the precise exchange of words between both men; nevertheless, several witnesses observed the victim raise both hands in the air in an apparent attempt to avoid strife. Craig then walked away; however, upon being tapped on the shoulder, he turned around and Mark struck him in the face. A fistfight ensued.

The appellant joined in the struggle. After they were separated by other bar patrons, the three men eventually moved to the area immediately around the barroom door. As Craig stood in the doorway, the appellant fired a single shot within close range from a .25 caliber automatic handgun that pierced the victim's heart and caused his death.

The appellant argues first that the Information filed by the District Attorney's Office was invalid for failure to comply with the signature provisions of Rule 225(b) of the Pa.R.Crim.P. Rule 225(b) specifically requires that "the Information shall be signed by the attorney for the Commonwealth...." The particular Information filed here contained only the rubber stamped facsimile of the Cambria County district attorney's signature. No attempt to identify the district attorney by a handwritten signature, initials or mark was made by either the district attorney himself or designated personnel.

The appellant submits two decisional sources in support of his position that a stamped facsimile alone does not satisfy the signature requirement of Rule 225(b). *Commonwealth v. Belcher,* 258 Pa.Super. 153, 392 A.2d 730 (1978); *Commonwealth v. Emanuel,* 285 Pa.Super. 594, 428 A.2d 204 (1981). The *Belcher* court was confronted with an Information that bore no signature whatsoever. Neither initials nor a stamped facsimile was applied; the signature line was completely blank. The court proceeded to find the Information void *ab initio* since an unsigned Information gives no indication that anyone evaluated the propriety of instituting criminal proceedings. Furthermore, the *Belcher* court concluded that a district attorney's failure to sign a Bill of Information was irremediable and that the defendant's choice to raise the defective Information for the first time on appeal, instead of in pre-trial motions, does not constitute a waiver of the right to a dismissal of charges. A *signed* Information, according to *Belcher,* supra, is mandatory, and not simply directory.

The decision in *Emanuel,* supra, is closely akin to the facts presented here. Ten Bills of Information were filed against the defendant in *Emanuel,* supra, with each Bill containing only a rubber stamp facsimile of the signature of the district attorney in Delaware County. The *Emanuel* court was similarly faced with the task of rendering an interpretation of the word "signed" as used in Rule 225(b). The court eventually concluded that the Bill of Information

displaying a rubber stamp facsimile does not satisfy the requirement of a "signed" Information under Rule 225(b). This decision emanated in part from the policy espoused in *Belcher*, supra, that only a signed Information could insure the "authenticity and reliability" of the Bill. The *Emanuel* court also reasoned that the validity of stamped Bills of Information would surely lead to rampant and indiscreet use of rubber stamps by unauthorized employees in the district attorney's office.

■ In accordance with *Emanuel*, supra, we agree with the appellant to the extent that a mere rubber stamp facsimile of the district attorney's signature does not satisfy the requirements of Pa.R.Crim.P. 225(b). Indeed, the recent decision of *Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982) expressed the degrading qualities of a rubber stamp facsimile.

It would demean the signature of this fateful document if we were to interpret the words "shall be signed" to permit affixing a rubber stamp facsimile to the Information. We would thus reduce the required attestation to a mere clinical mechanism no different or more deliberative, for example, than assigning the Information a file number for office convenience. It would be simpler and just as meaningful to have the name of the attorney for the Commonwealth preprinted on the Information form. Id., 306 Pa.Superior Ct. at 403, 452 A.2d at 787.

While *Veneri*, supra, and *Emanuel*, supra, are commensurate to the extent that they both hold that a rubber stamp facsimile violates Rule 225(b), *Veneri*, supra, steps outside the purview of *Emanuel*, supra, by addressing the *effect* of a Bill of Information bearing only a rubber stamp facsimile. *Belcher*, supra, ruled that an unsigned Bill rendered itself void *ab initio*, thereby permitting the defendant to raise the defect *at any time* during trial court or appellate court proceedings for the purpose of acquiring a dismissal of the charges. *Veneri*, supra, overruled the *Belcher*, supra, decision to the extent of the void/voidable issue through a further holding that the signature mandate of Rule 225(b) is

directory only. The absence, then, of a "signature" as defined in *Emanuel,* supra, merely renders the Information *voidable;* a defendant's failure to raise the defect in a pre-trial motion constitutes a waiver and immunizes the unsigned information from a Rule 225(b) attack at any stage following pre-trial proceedings.

We are persuaded by the holdings and rationale of *Veneri,* supra. While we condemn the practice of issuing unsigned Bills of Information, as they have been defined in *Emanuel,* supra, we are compelled to agree with *Veneri,* supra, in believing that no prejudice is suffered by an accused once discovery is completed and the trial proceedings have begun. A dismissal of charges and a discharge of an accused or, more particularly, an imprisoned felon, are alarmingly unreasonable and unnecessary consequences of an unsigned Bill of Information. The appellant, here, raises the rubber stamp facsimile for the first time on appeal; his refusal to raise it in pre-trial motions precludes discharge.

■ Secondly, appellant argues that the Commonwealth's exhibit # 3, a shell casing retrieved from the threshold area of the bar, and exhibit # 4, the .25 caliber bullet removed from the victim's body, were improperly admitted into evidence due to a break in the chain of custody. Appellant makes reference here to the absence of any testimony by the receptionist who received both exhibits at the State Police Crime Laboratory before releasing them to Trooper Mayfield, a ballistic's expert. It has been held that gaps in testimony concerning chain of custody do not affect the admissibility of otherwise relevant physical evidence, instead, such deficiencies only affect the weight to be given such evidence. *Commonwealth v. Royster,* 472 Pa. 581, 372 A.2d 1194 (1977); *Commonwealth v. Bolden,* 486 Pa. 383, 406 A.2d 333 (1979). The only question, then, is whether the shell casing and bullet were relevant items of evidence. We find support in the record that indeed they were relevant to the appellant's guilt or innocence. It was therefore, not reversible error for the lower court to admit the shell casing and bullet into evidence.

■ Next, the appellant argues that Robert Wingard, as a lay witness, could not properly attest to what he believed to be a dark-colored .25 caliber automatic pistol carried by the appellant several months prior to the slaying. Robert Wingard was the instructor of a CETA-sponsored auto body repair class in which the appellant was enrolled as a student in the Autumn of 1979. During a class session in January, 1980, the appellant showed a handgun to Mr. Wingard and was instructed to remove it from class and place it in his vehicle. The appellant complied with Mr. Wingard's command.

Mr. Wingard further testified that he handled the appellant's weapon and he was able to identify it as a .25 caliber automatic due to the fact that he, himself, owned a .25 caliber automatic at that time. We do not believe that this specific identification of the handgun, particularly in light of Mr. Wingard's familiarity with that particular type of handgun, required special knowledge to which only a firearm's expert could attest. Lay witnesses may testify to facts and conclusions drawn from their personal knowledge. See *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978).

■ The final issue that we are compelled to address is whether the lower court erred in denying appellant's request for a jury instruction concerning a missing Commonwealth witness. The victim's brother, Jason Mickens, testified in regard to a fistfight involving the victim and the appellant's brother, Mark March, one month before the slaying. After assisting others in separating Mark March and his brother, Jason Mickens drove March and an acquitance, named "Thor" to their respective homes. In a written statement taken by police officers on March 31, 1980, Jason said only that he drove Mark and a "friend"; he did not identify his friend as "Thor" until cross-examination by defense counsel at trial. Appellant now argues that the Commonwealth was obliged to discover before trial the identity of the third person in Jason's car. After all, according to the appellant, the statement was in the Commonwealth's sole possession. Furthermore, he maintains

that it was error to admit the written statement and testimony of Jason Mickens since the Commonwealth did not make such evidence available to the defense before trial as provided for in Pa.R.Crim.P. 305(B)(1). As a result of admitting both the written statement and testimony, appellant argues that the Court should have granted appellant's request for a special instruction to the jury. This instruction would allow the jury to consider the Commonwealth's failure to produce for trial evidence within its sole control as an inference that such unveiled evidence is detrimental to the prosecutor's case.

Appellant relies heavily upon *Commonwealth v. Trignani*, 185 Pa.Super. 332, 138 A.2d 215 (1958), In *Trignani*, supra, the defendant, accompanied by counsel, surrendered himself to police. Defendant offered an alibi. He informed several interrogating policemen that he was working with a few other men at 763 South 8th Street at the time the robbery and assault and battery were committed. Appellant further informed the officers that he could recall only two of these men as "Joe" and "Domenick". "Domenick" was not produced for trial. The court concluded that where certain evidence is part of the proceedings and is in the sole control of that party who can benefit the most from producing it, and where that party does not give a satisfactory reason for not producing it, the jury should be instructed that it may draw an inference that such unproduced testimony was not beneficial to the party's case. *Wills v. Hardcastle*, 19 Pa.Super. 525 (1902); *Haas v. Kasnot*, 371 Pa. 580, 92 A.2d 171 (1952).

We do not believe that *Trignani*, supra, is controlling. The defendant in *Trignani*, supra, maintained an alibi defense throughout the proceedings. He intended to establish such a defense through the direct examination of "Domenick", however, he neither produced "Domenick" for trial; nor issued a reasonable explanation for his absence. Therefore, the jury was correctly instructed that it may infer that

the absent witness would not provide favorable testimony for the defense.

Here, the appellant argues that "Thor" was a proper part of the prosecution's case in that he could corroborate the testimony of Jason Mickens to the extent that Mark March allegedly told Jason that he and his brother, Richard, would retaliate and "get" the victim. Unlike *Trignani*, supra, we do not believe that the absence of "Thor's" testimony dictates a jury instruction allowing the jury to infer that the testimony was detrimental to the prosecution. Although the written statement was in the prosecution's control, a satisfactory reason for not producing "Thor" as a witness existed, namely, that the testimony of Jason Mickens alone was sufficient to establish the retaliatory statement of Mark March. Moreover, *Trignani*, itself, permitted the testimony of *only some* of the policemen present during the defendant's interrogation. The absence of the other policemen did not mandate an instruction similar to that requested by appellant here.

Appellant raises these remaining arguments: (1) that the shell casing was irrelevant evidence because nothing was offered to connect it with the bullet removed from the victim's body or any weapon used to fire the bullet; (2) that the testimony of Charles Mickens was legally and factually irrelevant; (3) that the evidence elicited through the testimony of Robert Wingard was too remote to the shooting in March, 1980 to be relevant; (4) that the testimony of William Herring was inadmissible as hearsay; and, (5) that the testimony of Cornell Jason Mickens was inadmissible due to the fact that the Commonwealth failed to disclose an earlier written statement by Cornell to the appellant under Pa.R.Crim.P. 305. We have reviewed these remaining arguments in light of the applicable law. We find the lower court opinion to be a thorough and accurate disposition of these arguments; therefore, we defer to the lower court to that extent.

Judgment of sentence affirmed.