459 A.2d 389

**COMMONWEALTH of Pennsylvania**

v.

**James CAREY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1982.

Filed April 15, 1983.

Petition for Allowance of Appeal Denied Oct. 12, 1983.

---

22

Randall E. Zimmerman, Mifflintown, for appellant.

Stewart L. Kurtz, District Attorney, Huntingdon, submitted a brief on behalf of Commonwealth, appellee.

Before WIEAND, BECK and MONTEMURO, JJ.

WIEAND, Judge:

James Carey was tried by jury and found guilty of burglary[1] and criminal trespass.[2] Post verdict motions were dismissed, and Carey was sentenced to a term of imprisonment for burglary only. On direct appeal, Carey contends (1) that he did not receive a speedy trial within the standards of Pa.R.Crim.P. 1100; (2) that the trial court erred in refusing motions for mistrial because of alleged prosecutorial misconduct during closing argument; and (3) that the trial court erred in giving a "missing witness" instruction to the jury. There is no merit in these arguments and, therefore, we affirm the judgment of sentence.

Appellant was apprehended by police at or about 12:30 o'clock, a.m., on October 1, 1979, as he fled from a jewelry

1. 18 Pa.C.S. § 3502(a).

2. 18 Pa.C.S. § 3503(a).

store in the Borough of Huntingdon, Huntingdon County. A neighbor testified that she had seen an unidentified person enter the jewelry store through a window. A few minutes later, after police had arrived, she saw someone exit through the same window and run away. Appellant was apprehended by police in a yard adjoining the jewelry store by a policeman who gave chase after he observed appellant diving through the jewelry store window. Inside the store, police found burglary tools, pry marks on the safe and various merchandise in disarray.

■ A criminal complaint was filed against appellant later the same day. Under the speedy trial standards of Pa.R. Crim.P. 1100(b), the Commonwealth was required to commence trial on the charges against appellant on or before March 31, 1980.[3] Because trial did not begin until May 6, 1980, thirty-six days after the run-date, we must examine the record to determine whether there was time to be excluded from the computation of the 180 day period or whether the delay was otherwise to be excused.

On February 18, 1980, the date set for trial, no judge had been regularly assigned to Huntingdon County. The sole judge of the Court of Common Pleas had been defeated in a retention election at the November, 1979, general election and had vacated his office on January 6, 1980. An appointment to fill the vacancy was not made by the Governor until February 28, 1980. Senate confirmation followed on March 25, 1980; and on April 4, 1980, the Honorable Newton C. Taylor assumed the duties of office.

On February 18, 1980, the Honorable George Eppinger had been specially assigned to preside during criminal trials in Huntingdon County. On that date, appellant appeared without counsel and requested a continuance. In pertinent part, the following colloquy occurred:

3. The 180th day was Saturday, March 29, 1980. The final date for commencing trial, therefore, was Monday, March 31, 1980. See: 1 Pa.C.S. § 1908. See also: *Commonwealth v. Sanford,* 497 Pa. 442, 441 A.2d 1220 (1982); *Commonwealth v. Jones,* 473 Pa. 211, 373 A.2d 1338 (1977).

BY MR. KURTZ: Mr. Carey is in the Court, your Honor.

BY THE COURT: What is your first name?

BY THE DEFENDANT: James Patrick Carey.

BY MR. KURTZ: There was a preliminary hearing on this matter on October the 9th, 1979, at which time Attorney Alan Ellis of the Centre County Bar appeared on behalf of Mr. Carey. Subsequently, Mr. Ellis wrote to me requesting certain information and documents, which we supplied. I might show the Court a copy of the letter I received from Mr. Ellis. And then last month—I am sorry, on February the 7th I received this letter. Mr. Carey advises the Court Administrator that he has paid Mr. Ellis.

BY THE DEFENDANT: Not full, not in full. I am just waiting for the check to come back to pay him in full.

BY THE COURT: Well, Mr. Carey, your case is scheduled for trial this morning.

BY MR. KURTZ: Yes, sir.

BY THE COURT: Are you prepared to proceed?

BY THE DEFENDANT: No, I'm not. I don't have counsel. This is a last minute thing what happened. He told me he was going to pull out. I didn't know anything about it.

BY THE COURT: When did you find out?

BY THE DEFENDANT: A couple days ago.

. . . .

BY THE COURT: Where is [your attorney]?

BY THE DEFENDANT: I don't know if he is in Israel or—he didn't say exactly. He said he would be out of the country until the 17th.

BY THE COURT: Until when?

BY THE DEFENDANT: Until the 17th of next month.

BY THE COURT: What do you propose, Mr. Carey.

BY THE DEFENDANT: Well, I want to pay him. I have problems at home. I got a wife that is pregnant, pay the hospital bills, doctor bills and everything else.

BY THE COURT: Yes, I can see that thirty-five hundred dollar attorney bill would be tough. What is the charge?

BY MR. KURTZ: Well, the Information charges two counts. Count 1 charges burglary and Count 2 charges criminal trespass. The Complaint alleges, ". . . on the 1st day of October at approximately 12:30 a.m. the Defendant entered and remained within the property of the Continental Jewelry Store in the Borough of Huntingdon." I might say that the Commonwealth's evidence would indicate that the Defendant was apprehended in the store.

BY THE COURT: Now, what is the date the Information was filed?

BY MR. KURTZ: The Information was filed on the 4th day of December.

BY THE COURT: What explains the delay between 10/1 and—oh, well, the preliminary hearing.

BY MR. KURTZ: The Complaint was filed October 1.

BY THE DEFENDANT: If you want a waiver of the 180-Day Rule, I will sign it. Give it to me. That is no problem.

BY THE COURT: Well, that's only part of the problem, Mr. Carey. The other part of the problem is that Huntingdon County has difficulty at the present time with the availability of judges and I am here now and would like to try this case. It sounds to me like your attorney never intended to be here anyway. If he left the country, even if you paid him the $2,000, he wouldn't be here?

BY THE DEFENDANT: Well, I don't have any control over him.

BY THE COURT: I understand that. Neither do we. You should have gotten a commitment from him so that he had entered an appearance.

. . . .

BY THE COURT: We have been advised, Mr. Carey, that the 180 days will expire on March the 29th, 1980. You say we do not know when the trial will be held?

BY MR. KURTZ: We do not. The Court Administrator has been trying, but at this point in time we have no

judge who has agreed or consented to give us any available time for the trial of cases. We have a judge coming one day for arraignment.

BY THE COURT: How long are you willing to waive it for, Mr. Carey?

BY THE DEFENDANT: For as long as you want; as long as you get it straightened out.

BY THE COURT: He could waive it.

BY THE DEFENDANT: I'd like at least until my wife delivers the child.

BY THE COURT: When is that going to be?

BY THE DEFENDANT: Sometime within the next two weeks.

BY THE COURT: I was thinking more in terms of waiving it for 90 days and then, if—so that on the 90th day after today you would be in exactly the same position you are today.

BY THE DEFENDANT: Well, you know, I am—

BY THE COURT: The Commonwealth has only about 40 days in which to try it. Are you willing to do that?

BY THE DEFENDANT: Yes.

BY THE COURT: Is that alright?

BY MR. KURTZ: Yes.

BY THE COURT: In other words, if the case was scheduled for trial any time within 90 days from today, plus whatever there is left, that makes about 130 days. Are you willing to go that far?

BY THE DEFENDANT: As long as I can get two weeks until—

BY THE COURT: But you are entitled to be tried within 180 days.

BY THE DEFENDANT: I understand that.

BY THE COURT: And we are ready to try you and in Huntingdon County; they have a particular problem because there is no judge here to try you on a regular basis, which means that they have to have visiting judges. I am

here, a jury is here and we are ready to go, except you are not ready you say.

BY THE DEFENDANT: And the witnesses aren't here either.

BY THE COURT: Who is?

BY THE DEFENDANT: I don't know if the police office [sic] and whoever is involved.

BY THE COURT: We would pick a trial day and schedule it for trial. That's the way we operate.

. . . .

BY THE DEFENDANT: I am willing to waive it until—

BY THE COURT: Is 90 too much, 60 alright or what?

BY MR. KURTZ: 90, I think would be—

BY THE COURT: All right.

Following this colloquy, an order was entered as follows:

NOW, February 18, 1980, the Defendant having appeared in open Court and having represented to the Court that he had paid a $1,500.00 retainer fee to Alan Ellis and that Alan Ellis did not appear today for the trial of the case, and it further appearing to the Court that the Defendant is expected to pay a balance of $2,000.00 to Alan Ellis, which he hopes to pay from his IRS return, and the Defendant making a motion to continue the case for a period of 90 days and agrees that 90 days from this date he would be in exactly the same position that he would be in this date with regard to the running of the time in Rule 1100,

The Court being concerned there is no regular sitting judge in Huntingdon County and that the county has experienced some difficulty in obtaining judes [sic] for trials and feeling that the 90-day period would be appropriate,

IT IS ORDERED the case be continued for a period of 90 days and the case may be called for trial sooner if the Court Administrator is able to list the case before a judge presiding in Huntingdon County.

When the case was subsequently tried, appellant was represented by an assistant public defender, who filed a timely motion to dismiss. The motion was denied after hearing.

■ It is well settled that "Rule 1100, like the right to a speedy trial which it protects, may be waived." *Commonwealth v. Myrick*, 468 Pa. 155, 159, 360 A.2d 598, 600 (1976). See also: *Commonwealth v. Manley*, 491 Pa. 461, 468, 421 A.2d 636, 640 (1980); *Commonwealth v. Green*, 292 Pa.Super. 299, 301, 437 A.2d 54, 55 (1981). It is correct, of course, that in such cases the Commonwealth bears the burden of demonstrating that a purported waiver is the product of an "informed and voluntary decision." *Commonwealth v. Manley, supra* 491 Pa. at 468, 421 A.2d at 640. See also: *Commonwealth v. Coleman*, 477 Pa. 400, 407, 383 A.2d 1268, 1271 (1978); *Commonwealth v. Myrick, supra* 468 Pa. at 160, 360 A.2d at 600–601; *Commonwealth v. Martin*, 300 Pa.Super. 497, 501, 446 A.2d 965, 967 (1982); *Commonwealth v. Green, supra* 292 Pa.Super. at 301, 437 A.2d at 55. However, "[t]here are no formal requirements for a valid waiver of Rule 1100; so long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity." *Commonwealth v. Brown*, 497 Pa. 7, 11, 438 A.2d 592, 594 (1981), quoting from *Commonwealth v. Myrick, supra* 468 Pa. at 160, 360 A.2d at 600. Accord: *Commonwealth v. Martin, supra*.

In the instant case, it was appellant who desired a delay in the start of his trial and who initiated the suggestion that he was willing to waive the right to be tried within 180 days. He was without counsel, his wife was expecting a child and, in order to obtain a postponement, he told the court he would agree to a waiver for "as long as you want." When the court, because of the absence of counsel and the uncertain availability of another trial judge, suggested a delay for as long as 90 days, appellant acquiesced without hesitation or suggestion of reluctance.

The record colloquy in this case was adequate to inform appellant of the requirements of Rule 1100. There was no

requirement that counsel be present or that any particular, "magic words" be spoken. We conclude, therefore, that appellant validly waived his right to be tried within 180 days. Having led the trial court to believe that he required a delay and that a delay of 90 days was satisfactory, appellant will not now be permitted to take advantage of his own conduct to obtain a dismissal of the charges against him. *Commonwealth v. Brown, supra; Commonwealth v. Lee,* 297 Pa.Super. 216, 443 A.2d 804 (1982). See also: *Commonwealth v. Walls,* 303 Pa.Super. 284, 449 A.2d 690 (1982); *Commonwealth v. Garrison,* 277 Pa.Super. 18, 419 A.2d 638 (1980); *Commonwealth v. Lovera,* 248 Pa.Super. 439, 375 A.2d 178 (1977); *Commonwealth v. Hickson,* 235 Pa.Super. 496, 344 A.2d 617 (1975).

At trial, appellant was not represented by the same lawyer who had represented him in proceedings prior to February 18, 1980. His trial counsel was an assistant public defender. Because there was a valid waiver of the requirements of Rule 1100, we find it unnecessary to determine the amount of time otherwise excludable because of the unavailability of counsel for the appellant.

Appellant contends that the prosecuting attorney was guilty of misconduct when, during closing argument to the jury, he suggested that he found the testimony of appellant's wife "curious" and when he distinguished the facts of appellant's case from those burglaries which "go unsolved because the individual escapes into the night." We find in these remarks no basis for setting aside the verdict of the jury. "Comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Nicholson,* 308 Pa.Super. 370, 384, 454 A.2d 581, 588 (1982), quoting from *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). See also: *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 53, 454 A.2d 937, 958 (1982); *Commonwealth v.*

*Burton,* 491 Pa. 13, 22, 417 A.2d 611, 615–616 (1980); *Commonwealth v. Brown,* 489 Pa. 285, 297–298, 414 A.2d 70, 76 (1980); *Commonwealth v. Martin,* 307 Pa.Super. 118, 123, 452 A.2d 1066, 1069 (1982); *Commonwealth v. Gilliard,* 300 Pa.Super. 469, 477, 446 A.2d 951, 954–955 (1982); *Commonwealth v. Williams,* 295 Pa.Super. 369, 377, 441 A.2d 1277, 1281–1282 (1982).

■■■■ It is correct, as appellant contends, that counsel should not express his opinion concerning the credibility of a witness. *Commonwealth v. Gwaltney,* 497 Pa. 505, 513, 442 A.2d 236, 240 (1982). However, to determine the prejudicial effect of a district attorney's remarks they must be evaluated in the context in which they occurred. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Smith,* 490 Pa. 380, 416 A.2d 986 (1980). Counsel's statement that he found a witness' testimony "curious" was no more than an invitation to the jury to examine carefully the credibility of that testimony. Similarly, the prosecuting attorney's comment regarding those burglars who escape in the night did not refer to appellant but was intended to focus upon the fact that appellant, according to the Commonwealth's evidence, had been caught under circumstances demonstrating beyond any doubt his identity as the person who had left the jewelry store through a window. The trial court found that neither statement was of such inherent nature or delivered in such a manner that it could reasonably be said to have deprived appellant of a fair trial. We agree. The prosecutor was entitled to question the credibility of the witnesses and argue that the strength of the Commonwealth's evidence deserved a finding of guilt. See and compare: *Commonwealth v. Smith,* 490 Pa. 380, 388, 416 A.2d 986, 989 (1980); *Commonwealth v. Fawcett,* 297 Pa.Super. 379, 383–384, 443 A.2d 1172, 1174 (1982); *Commonwealth v. Henry,* 295 Pa.Super. 47, 56, 440 A.2d 1215, 1220 (1982); *Commonwealth v. Branch,* 292 Pa.Super. 425, 432–433, 437 A.2d 748, 751–752 (1981); *Commonwealth v. Gunderman,* 268 Pa.Super. 142, 148, 407 A.2d 870, 873 (1979).

■ During trial, appellant's counsel charged the arresting police officer with an inadequate investigation. He also attempted to attack the credibility of his identification of appellant as the person who had come through the window by showing that the officer had called the hospital to ascertain if anyone had reported a cut. There was evidence that blood had been found on the broken glass of the store window but that appellant had not sustained an observable injury. The District Attorney suggested to the jury that possibly someone else might have been in the store with appellant. This was obviously in response to the argument made by appellant's counsel. Although it was speculative, it did not require that a mistrial be granted, particularly in view of the argument made by defense counsel.

■ Appellant and his wife testified that on the day preceding his arrest they had driven from Philadelphia to State College to meet a friend. Later, they said, they had gone to Huntingdon to gather books and items which their friend asked them to collect from a given address. Appellant testified that he was inexplicably arrested while innocently walking the streets of Huntingdon, looking for the address given to him by his friend. The friend was neither identified nor called as a witness. Therefore, the prosecuting attorney referred to the absence of the witness during final summation and the court instructed the jury regarding the inference which may be drawn when a party fails to call a witness who is peculiarly available to that party. Appellant does not challenge the correctness of the court's statement of the rule. He argues, rather, that it was inapplicable and that it was error to permit any reference to his failure to call the unidentified friend to corroborate his explanation.

The missing witness inference rule was articulated by the Supreme Court in *Commonwealth v. Jones*, 455 Pa. 488, 317 A.2d 233 (1974), as follows:

" 'When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this per-

son's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.' " (citations omitted).

*Id.*, 455 Pa. at 495, 317 A.2d at 237, quoting *Commonwealth v. Moore*, 453 Pa. 302, 305, 309 A.2d 569, 570 (1973). See also: *Commonwealth v. Newmiller*, 487 Pa. 410, 419, 409 A.2d 834, 838–839 (1979) (plurality opinion); *Commonwealth v. March*, 308 Pa.Super. 343, 350, 454 A.2d 567, 571 (1982); *Commonwealth v. Stafford*, 307 Pa.Super. 278, 284, 453 A.2d 351, 354 (1982); *Commonwealth v. Matt*, 295 Pa.Super. 293, 297, 441 A.2d 1239, 1241 (1982); *Commonwealth v. Trignani*, 185 Pa.Super. 332, 340, 138 A.2d 215, 219, *aff'd*, 393 Pa. 140, 142 A.2d 160 (1958).

In the instant case, the witness was available only to appellant. The Commonwealth was unaware of his existence or identity. The witness' purported testimony was such that it would have been in appellant's best interests to produce it, for it would have tended to confirm those facts upon which appellant elected to rest his defense. Appellant's failure to call the witness, when coupled with his failure to explain the witness' absence, permitted the jury to infer that his testimony would not have supported appellant's version. See and compare: *Commonwealth v. Wright*, 444 Pa. 536, 282 A.2d 323 (1971); *Commonwealth v. Trignani, supra; Commonwealth v. March, supra; Commonwealth v. Gibson*, 245 Pa.Super. 103, 369 A.2d 314 (1976). Thus, it was not error to instruct the jury on the missing witness inference rule or to permit the District Attorney to refer to the absence of the witness during final summation.

Appellant has filed pro se a supplemental brief in which he contends that trial counsel was ineffective for failing to prevent testimony from a police officer which allegedly linked appellant to prior criminal conduct. By implication, he is also charging appellate counsel, who entered his appearance for appellant after post-trial motions had been filed but before they were argued, with ineffec-

34

tiveness for failing to raise in the trial court or argue on appeal the issue of trial counsel's alleged ineffectiveness. As a matter of policy, we will not consider appellant's pro se brief or adjudicate the issue attempted to be raised therein. If appellant chooses to pursue the issue, it can better be adjudicated in P.C.H.A. proceedings. *Commonwealth v. Almeida,* 306 Pa.Super. 197, 207–217, 452 A.2d 512, 516–521 (1982) (Concurring and Dissenting Opinion by Spaeth, J.). Meanwhile, we will affirm the judgment of sentence.

The judgment of sentence is affirmed.