500 A.2d 462

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Edward KHOREY, Appellant.**

Superior Court of Pennsylvania.

Argued July 23, 1984.

Filed Nov. 1, 1985.

---

Vincent C. Murovich, Jr., Pittsburgh, for appellant.

Lawrence N. Claus, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, WIEAND, CIRILLO, DEL SOLE, MONTEMURO, JOHNSON and POPOVICH, JJ.

WIEAND, Judge:

May a defendant withdraw a negotiated plea of guilty after sentence has been imposed when, in a related case, it is determined that prosecution should have been brought by the District Attorney of Allegheny County and not by the Attorney General of Pennsylvania? The trial court refused to permit the withdrawal of the guilty plea under these circumstances. We affirm.

On January 6, 1982, Edward Khorey, a police officer in the Borough of Munhall, was arrested and charged with bribery, criminal solicitation, obstructing the administration of law, and criminal conspiracy in connection with an alleged attempt by Bruce Carsia, Esquire, to "fix" a criminal case in which Carsia's clients were involved. The arrest was made as a result of an investigation conducted by the

Bureau of Criminal Investigation, a division of the Office of the Attorney General of Pennsylvania. In addition to the charges filed against Khorey, the Attorney General prosecuted Carsia and others involved in the alleged bribery attempts. On September 20, 1982, Khorey filed a pre-trial motion to dismiss the information on grounds that the Attorney General lacked the power and authority to investigate and/or prosecute him for criminal conduct. This motion was subsequently withdrawn as part of a plea agreement the terms of which required Khorey to enter pleas of guilty to all charges in exchange for a sentence of probation. The plea agreement was accepted by the court. Accordingly, Khorey entered pleas of guilty to all charges, and on January 24, 1983 was sentenced to probation for two years for bribery. Sentence was suspended on all remaining charges.

In the criminal action against Bruce Carsia, the trial court subsequently held that the Attorney General lacked authority to prosecute under the Commonwealth Attorney's Act, 71 P.S. § 732–101 et seq. The information signed by the Attorney General charging Carsia, therefore, was dismissed.[1] Khorey thereupon moved to withdraw the plea of guilty on which he had been previously sentenced. The trial court denied the motion, and Khorey appealed.

"When considering a petition to withdraw a guilty plea submitted to a trial court *after sentencing* ... it is well established that 'a showing of prejudice on the order of manifest injustice' ... is required before withdrawal is properly justified." *Commonwealth v. Shaffer*, 498 Pa. 342, 346, 446 A.2d 591, 593 (1982) (emphasis in original). See also: *Commonwealth v. Starr*, 450 Pa. 485, 490, 301 A.2d 592, 595 (1973). Manifest injustice exists where "the plea was involuntary, or was entered without knowledge of the charge." *Commonwealth v. Shaffer, supra* 498 Pa. at 346, 446 A.2d at 593, quoting American Bar Association

---

1. This Court affirmed in *Commonwealth v. Carsia*, 341 Pa.Super. 232, 491 A.2d 237 (1985).

Standards Relating to Pleas of Guilty (2d ed. 1980) Standard 14–2.1(b)(ii)(C).

"A plea of guilty constitutes a waiver of all nonjurisdictional defects and defenses.... When a defendant pleads guilty, he waives the right to challenge anything but the legality of his sentence and the validity of his plea." *Commonwealth v. Montgomery*, 485 Pa. 110, 114, 401 A.2d 318, 319 (1979). See also: *Commonwealth v. Moyer*, 497 Pa. 643, 444 A.2d 101 (1982); *Commonwealth v. Greer*, 457 Pa. 646, 326 A.2d 338 (1974); *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974); *Commonwealth v. McNeill*, 453 Pa. 102, 305 A.2d 51 (1973).

■ Khorey was not unaware of the consequences of his guilty plea. He had filed a pre-trial motion to quash the information on grounds that the Attorney General lacked authority to prosecute him. He withdrew the motion to quash in order that he might accept a favorable plea bargain offered by the Commonwealth. The terms of that bargain required the prosecution, in exchange for Khorey's plea of guilty, to recommend a sentence of probation. The guilty plea was preceded by a full and complete colloquy which included advice regarding the limited number of issues which could be raised on appeal following a plea of guilty. Thus, appellant fully understood that by entering a plea of guilty he would be withdrawing and would thereby waive the right to challenge the Attorney General's authority to investigate and prosecute his alleged participation in criminal activity in Allegheny County. This was part of the price which he paid for the sentence of probation.

■ Appellant does not contend on appeal that he failed to understand either the charges to which he pleaded guilty or the effect of his guilty plea. He argues that manifest injustice occurred because Carsia and other defendants similarly investigated and prosecuted were able to argue successfully that the Attorney General lacked authority to investigate and prosecute alleged corrupt practices in Allegheny County. We reject this argument. Subsequent rul-

ings in a related case do not constitute manifest injustice sufficient to permit a post-sentence withdrawal of a guilty plea.

The trial court, contrary to appellant's argument, did not lack jurisdiction to accept appellant's guilty plea and impose sentence. The Commonwealth Attorney's Act, *supra*, did not limit in any way the jurisdiction of the several courts of common pleas to hear and decide criminal cases. The statute served only to define the scope of the Attorney General's duties and responsibilities to investigate and prosecute criminal activity vis-a-vis the duties of the several district attorneys. Whether or not the Attorney General had authority to investigate and prosecute criminal activity was not determinative of the competency of the trial court to hear and determine controversies in criminal cases. *Commonwealth v. Little*, 455 Pa. 163, 314 A.2d 270 (1974). The courts of common pleas of each judicial district are vested with "unlimited jurisdiction in all cases except as may otherwise be provided by law." Constitution of Pennsylvania, Article V, Section 5(b). The jurisdiction of the courts of common pleas to hear and decide criminal cases has been neither abrogated nor limited by the Commonwealth Attorney's Act.

When Edward Khorey entered pleas of guilty, he abandoned an uncertain argument in exchange for a sentence that was both certain and favorable. He thereby waived the right to question further the fact that he had been prosecuted by the Attorney General and not by the District Attorney of Allegheny County. He will not be permitted to resurrect his pre-trial motion after he withdrew it, entered a plea of guilty and was sentenced for his crime.

The judgment of sentence for bribery, therefore, will be affirmed. The indefinitely suspended sentences for the remaining offenses, however, will be vacated. In *Commonwealth v. Ferrier*, 326 Pa.Super. 331, 473 A.2d 1375 (1984), this Court said:

Indefinitely suspended sentences were condemned by the Supreme Court in *Commonwealth v. Duff,* 414 Pa. 471, 200 A.2d 773 (1964), where the Court said:

> "Theories of implied probation and indefinite suspension of sentence are not only contrary to the clearly expressed intention of the legislature, but are also violative of true principles of probation and, as in this case, promote confusion where none should exist."

*Id.,* 414 Pa. at 474, 200 A.2d at 774. Although the *Duff* Court ascertained the intent of the legislature from earlier sentencing statutes, the same legislative intent is apparent from 42 Pa.C.S. § 9721(a). An indefinitely suspended sentence is not a sanctioned sentencing alternative. Moreover, it is as true now, as it was when *Duff* was decided, that an indefinitely suspended sentence violates "true principles of probation" and causes confusion where none should exist.

*Id.,* 326 Pa.Superior Ct. at 337, 473 A.2d at 1378. Not only is an indefinitely suspended sentence unauthorized, but it can serve no proper purpose. It cannot subsequently be revoked and an alternate sentence imposed, for the later sentence will violate principles of double jeopardy. *Commonwealth v. Goldhammer,* 507 Pa. 236, 489 A.2d 1307 (1985). Such a sentence can only be the source of future mischief. See: *Commonwealth v. Goldhammer, supra,* and *Commonwealth v. Ferrier, supra.* We hold, therefore, that indefinitely suspended sentences are illegal sentences which serve no valid purpose. They should not be imposed.

The judgment of sentence for bribery is affirmed. The suspended sentences for criminal solicitation, obstructing the administration of law, and criminal conspiracy are vacated.

SPAETH, President Judge, files a concurring opinion in which MONTEMURO, J., joins.

WICKERSHAM, J., files a concurring statement.

DEL SOLE, J., files a dissenting opinion.

SPAETH, President Judge, concurring:

I join in so much of the majority's opinion as discusses the issue of the indefinitely suspended sentences. I write separately on the issue of whether appellant should have been allowed to withdraw his guilty plea, for the majority does not appear to me to have met appellant's argument. Appellant does not, as the majority implies, *see* At 175–177, assert "manifest injustice" in its equitable sense; he knows, and does not deny, that he settled for the bird in hand—the favorable sentence—and gave up on the two in the bush—complete discharge. His argument is that he suffered "manifest injustice" in an absolute, or purely legal, sense: the trial court, he says, lacked subject-matter jurisdiction to accept his plea, and, therefore, could not impose any sentence on him.[1]

For a trial court to have subject matter jurisdiction to entertain a plea, not only must the crime have been committed within the county in which the court sits, but the defendant must be properly before the court, having been confronted by the Commonwealth "with a formal and specific accusation of the crimes charged." *Commonwealth v. Little*, 455 Pa. 163, 168, 314 A.2d 270, 273 (1974). "Since a question of subject-matter jurisdiction goes to the very power of the court to act, it may be raised at any time during the proceedings, ..." *Commonwealth v. Ziegler*, 251 Pa.Super. 147, 150, 380 A.2d 420, 422 (1977), and "[t]he lack of subject matter jurisdiction cannot be waived, even by a guilty plea, ..." *Commonwealth v. Mangum*, 231 Pa.Super. 162, 164, 332 A.2d 467, 468 (1974). *See, e.g., Commonwealth v. Borris*, 280 Pa.Super. 369, 421 A.2d 767 (1980) (trial court lacked jurisdiction to accept guilty plea

1. The majority's statement that "the Commonwealth Attorney's Act, *supra,* did not limit in any way the jurisdiction of the several courts of common pleas to hear and decide criminal cases[]", At 176, is, of course, true, but it does not address the issue raised by appellant, which is whether the lack of a valid indictment, due to the Attorney General's lack of statutory authority to prosecute, divested the court of subject matter jurisdiction.

where petition for allocatur on pre-trial motions was pending).

Appellant's argument raises just such a challenge to the trial court's authority to accept his plea. The argument, as I have indicated, proceeds as follows: the Attorney General was without authority under the Commonwealth Attorneys Act, 71 Pa.C.S. § 732-101 *et seq.*, to investigate, arrest, or prosecute him; the prosecution was therefore a nullity; the trial court therefore had no basis upon which to accept his plea and to sentence him. *See* Brief for Appellant at 14-15. This argument both depends upon and derives its force from our decision in *Commonwealth v. Carsia*, 341 Pa.Super. 232, 491 A.2d 237 (1985), where we held that the information was without effect because the Attorney General did indeed lack the authority to prosecute the case.

In considering appellant's argument, I have found it instructive to contrast the respective analyses of this court and the Supreme Court in *Commonwealth v. Diaz*, 235 Pa.Super. 352, 340 A.2d 559 (1975), *rev'd* 477 Pa. 122, 383 A.2d 852 (1978) (*Diaz I* and *Diaz II*).

In that case, the defendant, at the preliminary hearing, entered a guilty plea to attempted rape, and a simultaneous waiver of an indictment. The trial court concluded, *sua sponte*, that it had been without jurisdiction to accept the plea, for there had been no indictment or waiver prior to acceptance of the plea. A new complaint was therefore sworn out; appellant was rearrested; and the trial court vacated the sentence that had been entered on the plea. Appellant moved to dismiss the new complaint, and, after his motion was denied, similarly moved to dismiss the indictment based upon the complaint. On the trial court's certification, 42 Pa.C.S. § 702(b), we permitted appellant to take an interlocutory appeal, and affirmed. *See Diaz I*, 235 Pa.Superior Ct. at 353-54, 340 A.2d at 560; *Diaz II*, 477 Pa. at 124, 383 A.2d at 853-54. Appellant's sole argument, we noted, was that the trial court having accepted his guilty plea, it was precluded on double jeopardy principles from proceeding with a second prosecution for the same offense.

This argument turned upon whether the trial court had jurisdiction, in the absence of a valid indictment, to accept appellant's plea; if it did not, the first prosecution was a nullity, and the second prosecution was not precluded on double jeopardy principles. *See Diaz I*, 235 Pa.Superior Ct. at 354; 340 A.2d at 560. We held that the court did not have jurisdiction. "Not only is a grand jury indictment a protection for the individual charged, it is also an embodiment of the charge upon which a trial court may ground its deliberation. The indictment thus becomes a foundation for the court's subject-matter jurisdiction." *Diaz I*, 235 Pa.Superior Ct. at 355; 340 A.2d at 560–61. "[A] bill of indictment or an indictment is a necessary concommitant to subject-matter jurisdiction before a sentence may be imposed for offenses in court cases." *Diaz I*, 235 Pa.Superior Ct. at 356, 340 A.2d at 561. Because there had been no indictment prior to the court's acceptance of the defendant's guilty plea, "the acceptance of guilty plea and sentencing were a nullity, the court lacking jurisdiction." *Id.*

Were we to follow our analysis in *Diaz I* here, we should be obliged to conclude, as appellant argues, that the prosecution was a nullity, the Attorney General lacking authority to bring it, and conferred no authority upon the trial court to accept appellant's plea. We may not follow our analysis, however, for in *Diaz II* the Supreme Court rejected it.

In *Diaz II* the Supreme Court agreed with us that the issue turned upon whether the trial court had jurisdiction to accept the plea. It held, however, that the lack of an indictment did *not* divest the trial court of subject-matter jurisdiction. The purpose of the indictment, Justice MANDERINO said, was to give a defendant formal and specific notice of the charges against him. He reasoned that "[f]ormal notice of the charges is required so that the defendant knows exactly what the accusation is and so that the record will establish exactly what the defendant is guilty of in the event of a conviction." "Even a defective indictment," he concluded, could serve the purpose of giving formal notice, and so long as that purpose was served, the trial court had

authority to proceed with the case, despite a defective indictment, or no indictment at all. *Diaz II*, 477 Pa. at 126, 383 A.2d at 854. *See also Commonwealth v. Little, supra* 455 Pa. at 168, 314 A.2d at 272–73 (absence of criminal complaint does not deprive trial court of subject-matter jurisdiction, if indictment gives defendant notice of crimes of which he is accused.); *compare Commonwealth v. Longo*, 269 Pa.Super. 502, 410 A.2d 368 (1979) (SPAETH, J., concurring) (where indictment failed to charge appellant with offense, therefore depriving her of notice of specific charge against her, trial court lacked jurisdiction to entertain her plea.)

Here, there is no question that appellant knew, with all the required specificity, the nature of the charge against him: the specific facts underlying the charge were placed on record in his presence and that of counsel. *See* Reproduced Record at 38–46. That being so, we are compelled to find that the Attorney General's lack of authority to bring the prosecution did not affect the trial court's authority to accept appellant's plea.

MONTEMURO, J., joins in this opinion.

WICKERSHAM, Judge, concurring:

I agree with the majority that appellant should not be permitted to withdraw his guilty plea. I write separately to reiterate my disagreement with the decision in *Commonwealth v. Carsia*, 341 Pa.Super. 232, 491 A.2d 237 (1985), upon which appellant's motion to withdraw his guilty plea is based.

DEL SOLE, Judge, dissenting:

I must respectfully dissent.

In the companion case to this one, *Commonwealth v. Carsia*, 341 Pa.Super. 232, 491 A.2d 237 (1985), this Court was presented with a situation where an attorney was charged with Bribery, Obstructing the Administration of the Law, etc., and where the entire investigation and prose-

cution was conducted by representatives of the Attorney General's Office. Under a non-grand jury indictment, the charges were filed and Information signed by the Office of the Attorney General through the Executive Deputy Attorney General, Robert L. Keuch. The same office assumed full responsibility for the prosecution of the case as well. In *Carsia*, this Court noted the significance of the signature requirement for the filing of criminal informations. Under Pa.R.Crim.P. 225(a), "in counties in which the indicting grand jury has been abolished, after the defendant has been held for court, the Commonwealth either shall move to nolle presequi the charges or shall proceed by preparing an information and filing it with the Court of Common Pleas." Pennsylvania Rule of Criminal Procedure 225(b) mandates that: "The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains: 1) a caption showing that the prosecution is carried on in the name and by the authority of the Commonwealth of Pennsylvania." The reasoning underlying the requirement was drawn from *Commonwealth v. Emanuel*, 501 Pa. 581, 462 A.2d 653 (1983):

> Basically, the interest sought to be protected by the signature requirement of Pa.R.Crim.P. 225 is the right of a citizen to be free from unjust or unduly oppressive government interference. In the context of filing of a criminal information, this interest is protected in part, by our requirement in Pa.R.Crim.P. 225 that the information be signed by the government official authorizing the filing of the information ... Thus, due process requires that when the Commonwealth elects to file a criminal information against an individual, a particular identifiable government official must be named on the information, that person must sign the information by manual or fascimile signature, and the signatory must be prepared to establish that the information meets all legal requirements should he be called upon to do that by a court of competent jurisdiction.

*Id.*, 501 Pa. at 587–88, 462 A.2d at 656. This Court then determined that "[i]t is axiomatic that in establishing that the information meets all legal requirements the person signing that information must show that he is authorized to conduct the prosecution. Otherwise, the information cannot meet the requirement that the prosecution is carried on in the name of and by the authority of the Commonwealth of Pennsylvania.' Pa.R.Crim.P. 225(b)(1)." 341 Pa.Superior Ct. at 239, 491 A.2d at 240.

After a thorough analysis of the Commonwealth Attorney's Act provision, 71 Pa.C.S. § 732–101, our Court concluded that the Attorney General had no authority to investigate or prosecute Carsia's case and held "that the information signed by the Deputy Attorney General is defective on its face because it was signed by a person who had no authority to prosecute the case." 341 Pa.Superior Ct. at 256–57, 491 A.2d at 250. The trial court's dismissal of the information was affirmed.

Appellant was the police officer charged along with Carsia. The information was brought in the identical manner as *Carsia*. No Grand Jury indictment took place. The Appellant filed a Motion to Quash the Information/Request for Habeas Corpus Relief in which he made the identical challenge to the Attorney General's authority to investigate and prosecute under the Act. On the day of trial, however, Khorey withdrew the petition when offered a plea bargain by the Office of the Attorney General. The court accepted the plea and issued the judgment of sentence. After sentencing, Appellant sought to withdraw his plea, and the court denied the motion.

I would find that the criminal information filed against Khorey was facially defective and, therefore, the court lacked subject matter jurisdiction to accept his plea.[1]

1. *See: Commonwealth v. Chew*, 338 Pa.Super. 472, 487 A.2d 1379 (1985). "Appellant argues that the information contained 'defective and inaccurate information' and should, therefore, have been quashed. There is no merit to this contention. The face of the information was not defective and to quash it would have been improper." *Id.*, 338 Pa.Superior Ct. at 480, 487 A.2d at 1383.

Appellant made several arguments as to why the acceptance of his plea constituted a manifest injustice and warranted the withdrawal of that plea after sentencing.[2] The focus of my dissent is on Khorey's argument that the trial court lacked subject matter jurisdiction to accept a plea based on invalid information and could not, therefore, impose sentence.

The majority and I agree with the rule that: "[A] plea of guilty constitutes a waiver of all nonjurisdictional defects and defenses ..." *Commonwealth v. Montgomery*, 485 Pa. 110, 114, 401 A.2d 318, 319 (1979). In my opinion, the majority incorrectly concludes tht the trial court had jurisdiction to accept Khorey's plea. Judge Spaeth, in his concurring opinion, correctly notes that the jurisdiction here challenged does not rest on any limitations the Commonwealth Attorney's act, *supra.* imposes on the courts to decide criminal cases. Instead, the issue becomes whether the court had the ability to accept a plea and impose sentence based on fatally defective criminal information. I believe that it does not.

Judge Spaeth's concurrence analogizes this most unusual situation to that in *Commonwealth v. Diaz*, 235 Pa.Super. 352, 340 A.2d 559 (1975), *rev'd*, 477 Pa. 122, 383 A.2d 852 (1978). In *Diaz*, the defendant entered a guilty plea to Attempted Rape and simultaneously waived a Grand Jury indictment. The trial court ultimately determined that because there was no indictment or waiver prior to acceptance of the plea, subject matter jurisdiction did not attach and the acceptance of the guilty plea was unauthorized. After a new complaint was filed and defendant rearrested, the trial court vacated the first judgment of sentence. The defendant petitioned to Dismiss the complaint (which was denied), and then motioned to dismiss the indictment based on double jeopardy prohibitions. This court found that the

**2.** The majority correctly states that "when considering a petition to withdraw a guilty plea submitted to a trial court *after sentencing* ... it is established that 'a showing of prejudice on the order of manifest injustice' ... is required before withdrawal is properly justified." *Commonwealth v. Shaffer*, 498 Pa. 342, 346, 446 A.2d 591, 593 (1981).

invalid indictment deprived the court of subject matter jurisdiction to accept the plea. Therefore, the second prosecution was not barred by Double Jeopardy. Our Supreme Court reversed, relying on the purpose of an indictment as giving formal notice of the charges, which was afforded the defendant in the case. The Court ruled that even the defective indictment gave the trial court jurisdiction to proceed.

The applicability of *Diaz*, II to this case is limited because of the nature of the grand jury indictment. Referring back to the signature requirement for criminal informations, Pa.R.Crim.P. 225, I rely on *Commonwealth v. Belcher*, 258 Pa.Super. 153, 392 A.2d 730 (1978), *rev'd* 452 Pa.Super. 784, 452 A.2d 784 (1982), where the issue was whether the District Attorney's ommission of his signature on the information in a county where Grand Jury indictments had been abolished was a "mere formal defect which may be cured by amendment or does the absence of the signature render the purported information void *ab initio.* " Id., 258 Pa.Superior Ct. at 155, 392 A.2d at 730. The Court in *Belcher* discussed the distinction between Bills of Indictment by Grand Jury and Bills of Information by Petit Jury signed by the District Attorney. We said:

A bill of indictment presented by a grand jury has indicia of reliability not [f]ound [sic] in a bill of information. The grand jury has made an independent determination of the sufficiency of the evidence which need merely be ratified by the district attorney. In the case of a bill of information, however, it is the prosecutor alone who must decide whether to bring the defendant to trial. When the vehicle for initiating a criminal trial (i.e. the information) is unsigned, it is not at all apparent that a reasoned evaluation of the advisability of instituting a criminal trial has been made. The signature on the information is, therefore, a vital ingredient which guarantees the authenticity and reliability of the document. The requirement of R. 255(b) that the information be signed

by the attorney for the Commonwealth must, as a result, be deemed mandatory rather than merely discretionary. *Id.*, 258 Pa.Superior Ct. at 155, 392 A.2d at 731. *See also: Commonwealth v. Contakos*, 492 Pa. 465, 470, 424 A.2d 1284, 1287 (1981). The Court determined that because of the policy considerations involved, the lack of a signature by the District Attorney rendered the information void: "Until a validly signed information is issued there is in reality no information to be quashed. In the instant case there were no charges properly before the court at the time the trial was to commence." *Id.* 258 Pa.Super. at 155, 392 A.2d at 73.

Subsequent cases dealt with the issue of valid signature on informations and the void/voidable ramifications. In *Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982), we reversed *Belcher* by ruling that the signature requirement in Pa.R.Crim.P. 225(b) is directory and not mandatory and that lack of a signature causes the information to be voidable and curable and by amendment if raised in a pre-trial motion to quash. Pa.R.Crim.P. 306. The Court reasoned:

> We have already concluded that a signed information is required as a memorial that there has in fact been a reasonable decision to proceed with charges by one who holds a public trust. A defendant has a right to demand that a public official who accuses him of a crime give tangible evidence of his prosecutorial decision; that is to require that the attorney for the Commonwealth or his designee sign the information and thereby assume responsibility for his discretionary and deliberative charging act. Such a demand can be reasonably made only prior to trial so that the Commonwealth can have an opportunity to rectify an unsigned information.

306 Pa.Super. 404–405, 452 A.2d at 788.

The problem with this reasoning when applied to *Khorey* is that under the Pa.R.Crim.P. 306 providing for amendment of criminal information there could be no proper amend-

ment of the information against Appellant. The entire information is defective.

The Court stated two reasons in *Veneri* for reversing *Belcher:*

> First, it is clear that the absence of a signature does not prejudice the defendant in his preparation for trial. Secondly, it is unrealistic to assume that Pa.R.Crim.P. 255(b) intended the signature of the attorney for the Commonwealth to be the exclusive deliberative act which charged the defendant and that its absence annuls the validity or integrity of an otherwise untainted prosecution process. If the case had gone to a point where the information has lost any meaning, by proof at trial or the defendant stands convicted, to even require a signature at that stage would be not only meaningless but a mere technical vanity.

*Id.,* 306 Pa.Superior Ct. at 405, 452 A.2d at 788. *See also: Commonwealth v. March,* 308 Pa.Super. 343, 454 A.2d 567 (1982) (mere rubber stamp facimile of the District Attorney's signature does not satisfy Pa.R.Crim.P. 255(b)). *Commonwealth v. Jenkins,* 316 Pa.Super. 167, 174, 462 A.2d 847 (1983) (Assistant District Attorney signature on information satisfied, although not literally, the requirements of Pa.R.Crim.P. 255(b)).

I disagree that our courts, in their efforts to interpret Pa.R.Crim.P. 225(b) in such a way as to not "place form over substance", *Commonwealth v. Jenkins, Id.,* 316 Pa. Superior Ct. at 174, 462 A.2d at 850, intended to preclude Appellant from perfecting a remedy for the wrong that the Rule was intended to prevent. The Court's reasons in *Veneri* are inapplicable to Khorey. Khorey's case had not gone to "a point where the information has lost any meaning,", 306 Pa.Superior Ct. at 405, 452 A.2d at 788. The court accepted Khorey's plea based on totally ineffective information. The Attorney General's Office never had the opportunity to support the charge.

I would find, based on the rationale behind the signature requirement of Pa.R.Crim.P. 225(b), that Appellant has in-

deed shown a "manifest injustice" worthy of permitting withdrawal of his guilty plea. I would hold, in this limited and highly unusual case, that the court did not have subject matter jurisdiction over the Appellant by drawing a narrow exception to *Veneri,* where the information is so defective on its face as to be incurable by prompt amendment under Pa.R.Crim.P. 306 and where there was no opportunity to support the information by evidence at trial.

Therefore, I dissent.