(No. 25823.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* JAMES D. FLYNN, Defendant in Error.

*Opinion filed Dec. 12, 1940—Rehearing denied February 12, 1941.*

JOHN E. CASSIDY, Attorney General, FRED B. HAMILL, State's Attorney, and A. B. DENNIS, (C. H. SWICK, of counsel,) for the People.

ALBERT TUXHORN, and JAMES L. CAPEL, for defendant in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The People have sued out this writ of error to review a judgment of the Appellate Court for the Third District. It affirmed the judgment of the circuit court of Champaign county which quashed an indictment made up of nine counts against the mayor of Champaign, James D. Flynn.

The People say that this indictment was based on section 208 of division I of the Criminal Code. (Ill. Rev. Stat. 1939, chap. 38, par. 449.) Its essential words are: "Every person holding any public office (whether State, county or municipal), trust or employment, who shall be guilty of any palpable omission of duty, * * * where no special provision shall have been made for the punishment thereof, shall be fined not exceeding $10,000, and may be removed from his office, trust or employment." However, there is a special provision applicable here. Section 14 of article 2 of the Cities and Villages act, (Ill. Rev. Stat. 1939, chap. 24, par. 28,) provides: "In case the mayor or other municipal officer shall at any time be guilty of a palpable omission of duty, or shall willfully and corruptly be guilty of oppression, malconduct or misfeasance in the discharge of the duties of his office he shall be liable to indictment in any court of competent jurisdiction, and, on con-

viction, shall be fined in a sum not exceeding $1,000; and the court in which such conviction shall be had shall enter an order removing such officer from office." Therefore, the latter section was the only one applicable.

The defendant insists that this indictment was improperly endorsed "Indictment for Malfeasance" and that he was prejudiced by this. All the counts charged nonfeasance and therefore there is force in his contention, but we need not decide the case on that ground.

The People urge that by our holding in *People* v. *Looney*, 314 Ill. 150, and by force of the statute, (Ill. Rev. Stat. 1939, chap. 14, par. 4,) it was proper for the Attorney General to take exclusive charge of the proceedings before the grand jury which returned this indictment. The court's charge to the grand jury made no reference to the State's attorney but said: "In your investigation you will have the advice and guidance of the office of the Attorney General of the State of Illinois." The defendant's affidavit in support of the motion to quash charged that although the State's attorney had not refused to act and was not disqualified, absent, or sick, he was excluded from the grand jury room; that persons not entitled to be in the grand jury room were present, all to the prejudice of the defendant. The sixteenth ground of the motion to quash charged that the Attorney General and his assistants usurped the powers and duties of the State's attorney. Under the facts of this case, the last cited statute and decision did not authorize the Attorney General to take exclusive charge of the prosecution.

The People insist that this indictment is in the words of the statute and that there is a sufficient averment of *scienter* on the part of the defendant. There is no averment that the defendant had knowledge of the existence and operation of any particular gaming houses, lotteries, or houses of prostitution. It is charged in the first count that "the defendant did willfully, intentionally and unlawfully fail and omit to perform his official duty as mayor of the said

city of Champaign, in that he, * * * did, then and there, wilfully and intentionally fail, neglect and omit to use any sincere effort, or to make any sincere endeavor or attempt whatever to stop gaming and the keeping of common gaming houses in the said city of Champaign, which said gaming was then and there in progress, and which said common gaming houses were then and there being kept and operated in the said city of Champaign, in violation of the laws," etc.

The second count reads, in part, "did then and there wilfully, intentionally and unlawfully fail and omit to perform his official duty as mayor of said city of Champaign, in that he * * * did then and there, wilfully and intentionally fail, neglect and omit to use any effort, or to make any endeavor or attempt whatever, to stop the keeping and maintaining of houses of ill fame and places for the practice of prostitution and lewdness in the said city of Champaign, which said houses of ill fame and places for the practice of prostitution and lewdness were then and there being kept and maintained in the said city of Champaign, in violation," etc.

Part of the third count is that the defendant "did then and there wilfully, intentionally and unlawfully fail and omit to perform his official duty as mayor of said city of Champaign in that he * * * did then and there, wilfully and intentionally fail, neglect and omit to use any effort, or to make any endeavor or attempt whatever, to stop the setting up and promoting of lotteries for money and the disposing of property for value by lottery in the said city of Champaign, which said lotteries for money and the disposing of property for value were, then and there, set up and in progress and operation in the said city of Champaign in violation," etc.

The next three counts have added to the foregoing, with slight modifications that are not material, the charge that it was the duty of the defendant, as mayor of the city, to

make a sincere effort and endeavor and attempt to stop gaming, gaming houses, houses of ill fame, and to stop the setting up and promotion of lotteries. The nearest approach to an allegation of knowledge in these counts, as was the case in the first three, is the allegation that "he * * * did, then and there, wilfully, knowingly and intentionally, fail, neglect and omit to make any sincere effort, or endeavor, or attempt, whatever, to stop gaming," etc.

The last three counts are only different from the first six in that they have an ordinance pleaded, adopted by the city of Champaign.

There is no specific allegation that Flynn knew of the existence of any gaming house, place of prostitution, or place where a lottery was in operation. It is alleged he wilfully and knowingly failed, neglected, and omitted to make any effort or a sincere effort to stop such illegal enterprises. The indictment should have charged that Flynn knew that such places existed, where they were located, and that he failed to act.

The People rely on such decisions as *Dunbar* v. *United States,* 156 U. S. 185, which quotes from 1 Bishop on Criminal Procedure, third edition, section 504: "The word 'knowingly' or 'well knowing' will supply the place of a positive averment that the defendant knew the fact subsesequently stated." The charge under consideration was that the defendant "did wilfully, unlawfully, and knowingly, and with intent to defraud the revenues of the United States, smuggle and clandestinely introduce, into the United States," prepared opium. That decision is not in point here.

We cannot agree with the People's contention that the motion to quash should have been overruled because the various counts of the indictment were in the words of the statute. The rule applicable is stated in *People* v. *Brown,* 336 Ill. 257, 258. Section 9 of article 2 of our constitution provides that in a criminal prosecution the defendant shall have the right to demand the nature and cause of the accu-

sation against him. This was intended to give the accused such specific designation of the offense as will enable him to prepare his defense and to plead the judgment in bar of a subsequent prosecution for the same offense.

In Wharton's Criminal Pleading and Practice, section 220, it is said: "On the general principles of common law pleading it may be said that it is sufficient to frame the indictment in the words of the statute in all cases where the statute so far individuates the offense that the offender has proper notice, from the mere adoption of the statutory terms, what the offense he is to be tried for really is, but in no other case is it sufficient to follow the words of the statute. It is no more allowable, under a statutory charge, to put the defendant on trial without specification of the offense than it would be under a common law charge."

In *Lequat* v. *People*, 11 Ill. 330, an indictment was held bad which charged the defendant with failing to put up guide boards at the crossroads in his road district because it did not state that there were such crossings or specifically point out which of them had no such markers.

In *West* v. *People,* 137 Ill. 189, the defendant was charged with knowingly issuing false stock certificates but no specific certificates were designated. The court said, at page 200: "It cannot be said that the charge thus generally made, calling upon the defendant to defend and prepare to defend every transaction pertaining to the issue of such stock, would apprise him, with that reasonable certainty required by law, of the offense he was required to meet and defend against." See, also, *People* v. *Green,* 368 Ill. 242.

Flynn was entitled to know what houses of prostitution, common gaming houses, and lotteries he was charged with failing to proceed against. He was not obliged to ask for a bill of particulars. An indictment, which is the charge, cannot be helped by a bill of particulars. *People* v. *Bain,* 359 Ill. 455.

372

It is not necessary to discuss the other points raised because the nine counts of this indictment are bad for the reasons we have stated.

The judgments of the circuit court and Appellate Court were right, and that of the latter is affirmed.

*Judgment affirmed.*