Matson *v.* Jackson, Appellant.

Argued May 24, 1951.   Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Harry F. Stambaugh,* Special Counsel, with him *Edward Friedman,* Deputy Attorney General and *Robert E. Woodside, Jr.,* Attorney General, for appellants.

*Thomas D. McBride,* with him *Marjorie Hanson Matson* and *Michael von Moschzisker,* for appellee.

*William J. Woolston, Osmond K. Fraenkel, Arthur Garfield Hays* and *Herbert Monte Levy,* for American Civil Liberties Union, amicus curiae.

OPINION BY MR. JUSTICE HORACE STERN, June 27, 1951:

On January 17, 1951 former Attorney General Margiotti wrote to District Attorney Rahauser of Allegheny County that he had appointed Samuel M. Jackson, Deputy Attorney General, to conduct a public hearing "into the alleged communistic leanings, sympathies and utterances of Mrs. Marjorie Hanson Matson, Assistant District Attorney of Allegheny County", and that the hearing would be conducted in a Common Pleas courtroom in Allegheny County on January 22 at ten a.m. He further stated that Mrs. Matson "should be given every opportunity to be heard with counsel and witnesses." Thus it was apparently his intention to "try" Mrs. Matson in regard to her loyalty, with a deputy appointed by him to act as "judge".

Pursuant to his letter the Attorney General issued subpoenas to several witnesses to appear at the hearing, which started on the appointed day with Jackson presiding and Robert L. Kunzig, another Deputy Attorney General, assigned to present testimony to his fellow deputy. At that very same time, however, Mrs. Matson filed in the Court of Common Pleas of Allegheny County a bill in equity, accompanied by injunction affidavits, alleging that the proposed hearing was without warrant in law and in violation of her rights as a citizen, office holder and taxpayer; the affidavits averred that immediate and irreparable loss and damage would result to her if the hearing were held. The court thereupon forthwith granted a preliminary injunction enjoining

and restraining the two deputies from holding any proceeding, hearing or investigation relating to Mrs. Matson's fitness, either as an Assistant District Attorney or as an officer of the court. On January 26 defendants filed preliminary objections to the bill raising, inter alia, the question of the court's jurisdiction. On February 8, having heard argument thereon, the court entered an order dismissing the preliminary objections. Defendant Jackson now appeals from that order, while defendant Kunzig appeals from the decree of January 22 granting the preliminary injunction.

Plaintiff has filed motions to quash both appeals on the ground that an order dismissing preliminary objections to a bill in equity is merely interlocutory, also that the question of lack of jurisdiction should have been raised either under Equity Rule 29 by the filing of a petition praying that the service be set aside, or under the Act of March 5, 1925, P.L. 23, by the filing of a petition and obtaining of a rule to show cause (*Commonwealth ex rel. Shumaker v. New York & Pennsylvania Co., Inc.*, 367 Pa. 40, 45, 79 A. 2d 439, 443), neither of which proceedings was here instituted. The motions to quash will be denied. In *Kittanning Country Club's Liquor License Case*, 124 Pa. Superior Ct. 582, 587, 189 A. 679, 681, it was stated that "The court was not compelled to grant a rule to show cause where there were no issues of fact raised. The act expressly provides that the question raised may be determined on the pleadings." Since, in the present instance, the determination of the question of jurisdiction depended entirely upon a question of law the purely technical objection to the procedure employed to raise it is relatively unimportant. As to the order dismissing the preliminary objections being interlocutory, defendant Kunzig's appeal is, not from the order of February 8 dismissing those objections, but from the decree of January 22 granting the preliminary injunction,—an

appeal justified by the Act of February 14, 1866, P.L. 28, and which requires our consideration of the question of the power and authority of the Attorney General to institute the proposed hearing.

First as to the jurisdiction. In that regard defendants call attention to the Act of May 26, 1931, P.L. 191, which provides that "All actions at law or in equity by which it shall be sought to compel a State officer to perform or to restrain him from performing any official act in the execution of the laws of the Commonwealth shall be instituted in the Court of Common Pleas of Dauphin County, and, for such purpose, jurisdiction of all such actions is hereby conferred upon that court." It will be noted, however, that this statute deals only with actions concerning the performance of *any official act in the execution of the laws of the Commonwealth.* Was the hearing proposed by the Attorney General an "official act in the execution of the laws of the Commonwealth"? What law was being executed? The Attorney General asserts merely an intention to examine into the alleged communistic "leanings" of Mrs. Matson in order to determine whether she was fit to occupy the office of Assistant District Attorney; he does not claim that the hearing was aimed to ascertain whether, in the performance of her duties, she had at any time failed to execute the laws or been remiss in enforcing them or that she gave any indication whatever of a purpose or intention to betray her official trust. His proposed hearing, therefore, does not fall within the purview of the Act of 1931, and accordingly that act did not deprive the Court of Common Pleas of Allegheny County of its otherwise clearly existing jurisdiction over these defendants.

We come, then, to consideration of the question as to the power and authority of the Attorney General to institute the hearing. Section 520 of The Administrative Code of 1929, P.L. 177, provides that "Every admin-

istrative department . . . shall have the power to issue subpoenas, requiring the attendance of witnesses . . . [at] any hearing before such department, . . . ." The query immediately arises: What are the "hearings" which the Attorney General may properly conduct as being authorized by the Code? For the answer to that question we must turn to article IX, which enumerates the powers and duties of the Department of Justice and its Departmental Administrative Boards. Section 904 of that article provides that "The Department of Justice shall have the power, and its duty shall be, with the approval of the Governor: (a) To investigate any violations, or alleged violations, of the laws of the Commonwealth which may come to its notice; (b) To take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth." As to (a), the Attorney General does not suggest that any violations or alleged violations of the laws of the Commonwealth have been committed. As to (b), we have already pointed out that the proposed hearing cannot be justified as an aid to the execution or enforcement of the laws. Indeed a contrary view would be equivalent to holding that the Attorney General is vested with the power to conduct hearings as to the political, economic and social views of every public officer in the Commonwealth entrusted with the execution of the laws, from the Governor himself down to the least important officials, including even those duly elected, in order to ascertain whether, in his opinion, they are fit and competent to perform their respective duties in enforcing the laws,—a proposition the very statement of which illustrates its inherent absurdity.

Defendants rely principally upon section 901 of article IX, which provides that "The Department of Justice shall . . . continue to exercise the powers and perform the duties by law vested in and imposed upon the Attorney General, the Attorney General's Depart-

ment, and the Department of Justice." They argue that among such powers is that of superseding, under proper circumstances, the District Attorney of any county or any of his assistants, and that, in order to determine whether he should institute such proceedings, the Attorney General may hold a hearing and take testimony for that purpose. The obvious fallacy of this contention is in its conception of such right of supersession as extending to the complete disqualification, on the ground of general unfitness, of a district attorney or an assistant district attorney to continue in office and his replacement by the Attorney General or one of his deputies. The power of supersession proclaimed in *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 30, 31, 188 A. 524, 530; *Dauphin County Grand Jury Investigation Proceedings (No. 1),* 332 Pa. 289, 298, 2 A. 2d 783, 788; and *Margiotti Appeal,* 365 Pa. 330, 75 A. 2d 465, was not *such* a power, but merely one to supersede the District Attorney *in certain designated, specific proceedings* before the grand jury or in the criminal court. Certainly it was never, by the broadest stretch of imagination, regarded as including the right of the Attorney General to examine into the general qualifications, views and competence of a duly elected District Attorney, or one of his assistants, as a basis for supplanting him and thenceforth conducting the office by his own deputies.

The proposed hearing in this case was wholly without legal power or authority on the part of the Attorney General. If for any reason Mrs. Matson should be removed from office it would have to be by proceedings wholly different from those here attempted. To permit the existence of the power which the Attorney General asserts would be to open the door to possible abuses in view of the fact that in such a hearing there would be no procedural or evidentiary rules that would bind the inquisitor, no judge or other impartial arbiter to whom

290

the person under investigation could appeal for protection against unfair interrogation, and where the good name and reputation of the victim subjected to such a public hearing could be subtly and maliciously attacked and irreparable injury sustained by him without any right or possibility of legal redress. Of course, we do not mean to imply that any improper motive or purpose existed in the present instance on the part of the Attorney General, but merely to indicate the possibility of the abuse of such alleged power. We do not think that authority to conduct proceedings or hearings of the nature here in question is conferred upon the Attorney General by any of the provisions of the Administrative Code,—an authority that would be contrary to the spirit of all our laws which so jealously guard the rights of the individual.

Motions to quash overruled.

Order affirmed.