491 A.2d 237

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Bruce CARSIA, Appellee.**

Superior Court of Pennsylvania.

Argued July 23, 1984.

Filed April 4, 1985.

Petition for Allowance of Appeal Granted Sept. 6, 1985.

was, in fact, ruling on a purely legal issue and was granting a Motion to Dismiss and not sustaining a demurrer. (Tr. Trans. p. 23).

234

Lawrence N. Claus, Pittsburgh, for Commonwealth, appellant.

John R. Carroll, Philadelphia, for appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, WIEAND, CIRILLO, DEL SOLE, MONTEMURO, JOHNSON and POPOVICH, JJ.

MONTEMURO, Judge:

In this appeal, our court is asked once again to delineate the scope of the power and authority of the Attorney General to prosecute criminal cases vis-a-vis the power and authority that is similarly vested in the district attorneys of the various counties. This controversy, like the mythological Phoenix, has repeatedly risen from the ashes renewed and regenerated; as many times as the courts and the legislature have attempted to resolve the conflict, it returns in a different form and in a different context, yet the substantive heart remains constant.

In this incarnation, the controversy is presented to us in the context of an appeal from an order of the Court of Common Pleas of Allegheny County granting a petition to quash criminal informations. The circumstances giving rise to this appeal are as follows.

The appellee, Bruce Carsia, was arrested and charged with bribery,[1] obstructing the administration of law,[2] conspiracy,[3] and solicitation[4] by Special Agent Dennis Danask of the Bureau of Criminal Investigation [BCI], the investi-

1. 18 Pa.C.S. § 4701.
2. 18 Pa.C.S. § 5101.
3. 18 Pa.C.S. § 903
4. 18 Pa.C.S. § 902

gative arm of the Office of the Attorney General. The charges arose out of an alleged attempt by the appellee, an Allegheny County attorney, to bribe two municipal police officers to fix a case, which was then pending before a West Mifflin Township District Justice, against two of the appellee's clients.[5]

The two officers reported the incident to their superiors, who contacted BCI. Investigation of the incident, including the interception and taping of wire and personal communications, was conducted solely by the BCI. After charges were filed, the prosecution of the case was assumed by the Office of the Attorney General through Executive Deputy Attorney General Robert L. Keuch, who signed the information, and through Deputy Attorney General Lawrence N. Claus.

Prior to trial, the appellee, through counsel, filed a "Petition to Quash the Information/Request for Habeas Corpus or other Appropriate Relief." The petition alleged that the Office of the Attorney General lacked the requisite authority to prosecute the action, and that instead the district attorney of Allegheny County should prosecute the action. The petition further alleged that the Attorney General's sole grant of authority to prosecute was set forth in Section 205 of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 164 § 101 *et seq*, 71 P.S. § 732–101 *et seq*, and that the instant prosecution was not within any of the enumerated categories of that section, 71 P.S. § 732–205(a)(1)–(8).

A hearing on the petition was conducted before the Honorable Bernard L. McGinley. The deputy attorney general presented argument and testimony to the effect that the investigation was conducted with the knowledge and consent of the Allegheny County District Attorney, and that the prosecution was being conducted in the manner in which the district attorney would have conducted it. At the

---

5. The clients were to go before the district justice for a preliminary hearing on charges arising from the theft of merchandise valued at six thousand ($6,000.00) dollars from a local department store.

conclusion of the hearing, the court concluded that the Office of the Attorney General was not authorized to prosecute the action under the Commonwealth Attorneys Act. The court therefore ordered that the information be dismissed.

The Commonwealth filed an "Application for Reconsideration of Defendant's Motion to Quash" alleging that the prosecution was authorized by Section 205(a)(1) and (2) of the Commonwealth Attorneys Act, 71 P.S. § 732–205(a)(1), (2). The application was denied by order of Judge McGinley on December 28, 1982. The office of Attorney General [hereinafter referred to as "Commonwealth"] immediately filed a notice of appeal.

Herein, the Commonwealth asserts that the lower court erroneously dismissed the information. The Commonwealth argues that the Office of the Attorney General possessed the power and authority to prosecute the action both under, and apart from, the Commonwealth Attorneys Act. We find no merit in these arguments. Before discussing the merits of these arguments, we must dispose of two preliminary questions.

The appellee argues that the instant appeal should be quashed because the Commonwealth has not been put out of court by the order of the lower court. The appellee alerts us to the fact that, subsequent to the dismissal of the instant information, an information charging the same offenses based on the same incident was filed by the Allegheny County District Attorney. The appellee argues that the Commonwealth is not out of court because the prosecution is being continued by the Commonwealth, merely through a different law firm. It is this kind of logic that gave the Sophists a bad name.

Regardless of the merits or status of the prosecution being conducted by the district attorney, an order has been entered in the present action terminating the prosecution of the charges. This order is a final order under Pa.R.A.P. 341(c), from which the Commonwealth properly may appeal.

Furthermore, it is an appeal in which substantial rights and interests are at stake. Thus, we decline the appellee's invitation to quash this appeal.

On the other matter, the Commonwealth would have us hold that the appellee lacks any standing to challenge the Attorney General's compliance with the Commonwealth Attorneys Act. The thrust of this argument is that the Act affords no express remedy wherein the Attorney General prosecutes an action for which there is no express grant of authority; consequently, it is argued that the remedy utilized by the lower court's dismissal of the information was improper. The Commonwealth's argument is viable only if the Commonwealth Attorneys Act is read in a vacuum devoid of other statutes and rules.

The case at hand concerns not only the respective spheres of authority of the Attorney General and the district attorneys of the various counties, but also the basic requirements for a valid information.

■ Both the legislature and the supreme court have promulgated requirements to be followed with respect to the filing of informations. Pa.R.Crim.P. 225(a) mandates that "the attorney for the Commonwealth ... shall proceed by preparing an information and filing it with the court of common pleas." Pa.R.Crim.P. 225(b) provides that "[t]he information shall be signed by the attorney for the Commonwealth...." The reason for the signature requirement was explicated in *Commonwealth v. Emanuel,* 501 Pa. 581, 462 A.2d 653 (1983) wherein it was stated:

> Basically, the interest sought to be protected by the signature requirement of Pa.R.Crim.P. 225 is the right of a citizen to be free from unjust or unduly oppressive government interference. In the context of the filing of a criminal information, this interest is protected in part, by our requirement in Pa.R.Crim.P. 225 that the information be signed by the government official authorizing the filing of the information.... Thus, due process requires that when the Commonwealth elects to file a criminal information against an individual, a particular identifiable

government official must be named on the information, that person must sign the information by manual or facsimile signature, and the signatory must be prepared to establish that the information meets all legal requirements, should he be called upon to do that by a court of competent jurisdiction.

*Id.*, 501 Pa. at 587–588, 462 A.2d at 656. It is axiomatic that in establishing that the information meets all legal requirements the person signing that information must show that he is authorized to conduct the prosecution. Otherwise the information cannot meet the requirement that "the prosecution is carried on in the name of and by the authority of the Commonwealth of Pennsylvania." Pa. R.Crim.P. 225(b)(1); *see also* Pa.R.Crim.P. 101A-Comment, which states:

As used in this rule, "Attorney for the Commonwealth" is intended to include not only the District Attorney and any deputy or assistant district attorney in the county, but also the Attorney General, and any deputy or assistant attorney general, *in those cases in the county which the Attorney General is authorized by law to prosecute.* (Emphasis added).

▮▮▮ Alternatively, it is mandated by statute that "[t]he district attorney sign all informations." 42 Pa.C.S. § 8931(c). The statute continues in subsection (i) to define "district attorney" as including "a special attorney appointed by the Attorney General in the manner provided by statute." 42 Pa.C.S. § 8931(i). In criminal prosecutions, the Attorney General's power to delegate the responsibility of executing his function is set forth in Section 205(d) of the Commonwealth Attorneys Act, which states:

(d) Powers when prosecuting.—Whenever the Attorney General prosecutes a criminal action, or appeal, he may employ such special deputies as are necessary for that purpose; such deputies shall take the oath of office and be clothed with all the powers, and subject to all the limitations imposed by law upon district attorneys, including the power to sign informations or indictments.

Whenever the Attorney General intervenes in a criminal action, the costs incurred as a result of the intervention shall be paid by the Commonwealth.

It is clear, however, that an Attorney General or any other official can only delegate an authority that that official possesses. Thus, unless the Attorney General was authorized to conduct the prosecution against the appellee, dismissal of the information was warranted.

We note as a final preliminary matter, that the Commonwealth raises other matters under the rubric of "standing", i.e., an assertion that the appellee challenged his arrest via the petition to quash, and that such a challenge was waived as untimely filed; and an assertion that the appellee challenged the jurisdiction of the court. We dismiss these assertions as being grounded in a misconception of the issues in the case, and having done so, we shall proceed to the more substantial aspects of the appeal.

The Commonwealth advances three arguments in support of its assertion that the lower court erred. We shall address these arguments in a manner which facilitates the exposition of the past problems the courts and the legislature have faced in delineating the bounds of the Attorney General's authority.

The Commonwealth argues that under the Pennsylvania Constitution, the Attorney General was authorized to investigate and prosecute the charges against the appellee. On May 16, 1978, the electorate approved a "constitutional amendment *creating* the office of elected Attorney General *to replace* the officer appointed by the Governor under constitutional authority since 1874." (Emphasis added.) JOINT STATE GOVERNMENT COMMISSION: OFFICE OF ELECTED ATTORNEY GENERAL Final Report at 1 (1978). Pa. CONST. Art. 4, § 4.1 provides:

*§ 4.1. Attorney General*

An Attorney General shall be chosen by the qualified electors of the Commonwealth on the day the general election is held for the Auditor General and State Treasurer; he shall hold his office during four years from the

third Tuesday of January next ensuing his election and shall not be eligible to serve continuously for more than two consecutive terms; he shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law.

The Commonwealth's argument is essentially that this provision contemplates that the Attorney General is vested with the authority which he possessed theretofore by virtue of common law, statutes, regulations and judicial pronouncements. Thus, the Commonwealth contends that the lower court erred in concluding that the only current source of authority by which the Attorney General may prosecute criminal cases is to be found in Section 205 of the Commonwealth Attorneys Act, 71 P.S. § 732–205. Rather, it is asserted the elected Attorney General is armed with the powers traditionally attributed to that office.

We note that the Commonwealth's argument invokes the spirit of a half-century of jurisprudence in this state. During this period, the courts and the legislature have from time to time surveyed the boundaries of the Attorney General's authority and from time to time the scope of that authority has been changed. The issue is one which has bred strong disagreement as exhibited by vigorous and even vociferous dissents in our courts. Indeed, the precise measure of the Attorney General's authority in the area of criminal investigation is not static, but is instead a dynamic and protean concept.

The question upon which our attention must focus is this: What is the basis for the authority of the office of the elected Attorney General to prosecute criminal actions? The root of our inquiry, Pa. CONST. Art. 4, § 4.1, only informs us that "he shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." The exact nature of the Attorney General's powers and duties is left undefined. The Commonwealth asserts that the words "as may be imposed by law" require us to consider all source of the law, and not merely the latest statutory enactment. It asserts that this construction is correct and cites the inclu-

sion of the phrase "he shall be chief law officer for the Commonwealth" as support for its argument. That phrase is said to be a term of art descriptive of the powers of the Attorney General under previous legislative enactments, *see* Act of April 9, 1929, P.L. 177, art. VII § 704, 71 P.S. § 244. Consequently, it is contended that its inclusion in the constitutional amendment, Pa. CONST. Art. 4, § 4.1, as well as in the current legislative enactment, the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 164, § 101 *et seq.*, 71 P.S. § 732–101, evidences a legislative intent to continue the power and authority of the Attorney General as it was prior to the constitutional amendment. We believe that reference to the historical powers of the Attorney General is necessary to the proper disposition of this issue.

Pennsylvania has been a unique jurisdiction in the nature and scope of authority granted to its Attorney General. Until 1850, he was the sole repository of the power of law enforcement in this Commonwealth, enjoying the same powers and prerogatives that the Attorney General of England enjoyed at common law. By the Act of May 3, 1850, P.L. 654, § 1, the legislature created the office of county district attorney, to carry out the function of criminal prosecutions including that of signing all bills of indictment, theretofore executed by the Attorney General, his deputies or his designees.[6] The Attorney General could still intervene in a criminal prosecution if requested to do so by the president judge of the jurisdiction in which the prosecution was pending. *See* Act of March 12, 1866, P.L. 85, Act of May 2, 1905, P.L. 351, Act of June 7, 1923 Art. IX, P.L. 498, 550. *See also Commonwealth v. McHale,* 97 Pa. 397 (1881); *Commonwealth v. Havrilla,* 38 Pa.Super. 292 (1909).

However, the division of authority between the attorney general and the local district attorneys remained unclear. It was certain that the district attorney had primary responsibility for local prosecutions. It was also clear that, by virtue of a series of statutes culminating in the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, Art. 1, § 1

**6.** 16 P.S. § 9952.

*et seq.,* 71 P.S. § 51 *et seq.,* the Attorney General had the power to intervene or "supersede" the district attorney under certain circumstances. *Id.* § 907, 71 P.S. § 297. Moreover, the Attorney General had the power "to investigate any violations, or alleged violations; of the laws of the Commonwealth which may come to [his] notice [and] ... [t]o take such steps ... as may be reasonably necessary to enforce the laws of the Commonwealth." *Id.* § 904, 71 P.S. § 294.

It was not until *Commonwealth v. Lehman,* 309 Pa. 486, 164 A. 526 (1932), that the courts construed the provisions of Section 907 of the Administrative Code of 1929. In *Lehman,* the defendant objected, albeit belatedly, to the supersession of the district attorney by the Attorney General, who designated a deputy to prosecute the cases. The Attorney General's intervention was at the request of the president judge. The defendant contended that supersession was improper where there is no vacancy in the office of district attorney, nor incapacitation or disqualification of the district attorney. The court found no merit in the argument.

*Lehman* unwittingly served as the sire of a generation of cases which saw the scope of the Attorney General's authority to prosecute criminal cases expand dramatically. The first born of this generation was *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 188 A. 524 (1936), in which Justice (later Chief Justice) Schaffer consummately discoursed upon the common law history of the office of Attorney General from the most ancient roots in sixteenth century England. The court concluded that the Pennsylvania Attorney General enjoyed the same powers as his common law ancestors. As stated by the court:

> We conclude from the review of decided cases and historical and other authorities that *the Attorney General of Pennsylvania is clothed with the powers and attributes which enveloped Attorneys General at common law,* including the right to investigate criminal acts, to institute proceedings in several counties of the Commonwealth, to sign indictments, to appear before the

grand jury and submit testimony, to appear in court and to try criminal cases on the Commonwealth's behalf,[2] and, in any and all these activities to supersede and set aside the district attorney *when in the Attorney General's judgment such action may be necessary.* (Footnote omitted) (emphasis added).

*Id.*, 325 Pa. at 30–31, 188 A. at 529–530. *Commonwealth ex rel. Minerd v. Margiotti,* clearly bestowed on the Attorney General an authority superior to that which he enjoyed under the Administrative Code of 1929 in that the intervention decision was consigned to the Attorney General. *Re Dauphin County Grand Jury Investigative Proceedings No. 1,* 332 Pa. 289, 2 A.2d 783 (1938); *Commonwealth v. Ryan,* 126 Pa.Super. 306, 309, 188 A. 764, 766 (1937).

By the Act of July 30, 1938, P.L. 17,[7] the Legislature put its imprimatur on the *Minerd* decision. The Act gave the Attorney General the "absolute discretion" to supersede a county district attorney in the investigation or prosecution of a criminal action. In *Re Dauphin County Grand Jury Investigative Proceedings No. 3,* 332 Pa. 358, 2 A.2d 809 (1938), the court interpreted the scope of that discretion to be

a discretion consistent with those immutable principles which govern the administration of justice, that is, a discretion reasonably based upon the attendant pertinent circumstances from which its exercise arises, and which is the only range of discretion permissible to a judicial or quasi-judicial officer.

*Id.*, 332 Pa. at 365, 2 A.2d at 813. It was also in this case that the first criticism of the rule in *Commonwealth ex rel.*

---

7.  The Act stated in pertinent part:
    The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:
    Section 1. In any investigation or proceeding whatsoever pending before any court of oyer and terminer and general jail delivery or before any court of quarter sessions in any county of this Commonwealth, the Attorney General of the Commonwealth may, at any state of the investigation or proceeding, in his absolute discretion, supersede and set aside the district attorney of the county.

*Minerd v. Margiotti, supra,* was unleashed. In a dissenting opinion, Justice Maxey stated that the court's discussion of, and reliance on, the common law authority of the Attorney General was superfluous under the facts of the case because the Attorney General's supersession of the district attorney was clearly authorized by Section 907 of the Administrative Code. Justice Maxey viewed the court's reliance on common law as mere dicta which was not binding on the court. He further expressed staunch disapproval of the Act of July 30, 1938, P.L. 17. This disapproval was borne out by the legislature's quick reversal in repealing that Act. Act of March 20, 1939, P.L. 8.

Despite the abrogation of the legislative mandate, the rule of *Commonwealth ex rel. Minerd v. Margiotti, supra,* maintained its potency for over forty years. *Gwinn v. Kane,* 465 Pa. 269, 348 A.2d 900 (1975) (court, however, relied on statutory authority under Administrative Code of 1929); *Packel v. Mirarchi,* 458 Pa. 602, 327 A.2d 53 (1974); *Commonwealth v. Fudeman,* 396 Pa. 236, 152 A.2d 428, *cert. denied,* 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157 (1959); *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952); *Matson v. Jackson,* 368 Pa. 283, 83 A.2d 134 (1951); *Commonwealth ex rel. Margiotti v. Orsini,* 368 Pa. 259, 81 A.2d 891 (1951); *Appeal of Margiotti,* 365 Pa. 330, 75 A.2d 465 (1950); *Commonwealth v. Bardascino,* 210 Pa.Super. 202, 232 A.2d 236 (1967).

During its reign however, the rule was subject to scathing attacks by various members of the judiciary, commencing with that of Justice Maxey in *Re Dauphin County Grand Jury Investigation Proceedings No. 3, supra.* His antagonistic mantle was taken up by Justice (later Chief Justice) Jones in the *Appeal of Margiotti, supra,* who observed:

> Even a cursory reading of the opinions in those cases will readily disclose that no question as to *common law* power in the Attorney General to supersede a District Attorney of his own motion was present for decision. Indeed, the matter had never been passed upon at com-

mon law for the all-sufficient reason that elected prosecuting officers were unknown to its political institutions. Ever since the creation of the offices of Attorney General and Solicitor General in England several centuries ago, prosecuting attorneys (beyond the two officers just mentioned) have been and still are the Attorney General's own appointees and, of course, subject to removal or supersession by him at his pleasure. Manifestly, no analogy can rightly be drawn between that system and the system which has obtained in Pennsylvania since the creation of the office of elective District Attorney by the Act of May 3, 1850, P.L. 654, Sec. 1,—an office later, and still, ordained by the Constitution of 1874 (Art. XIV, Secs. 1 and 2). The idea that a mere political appointee, beholden to his appointer and not to the people for his tenure, can, of his own volition, set aside and supersede a duly elected constitutional officer runs counter to even the most limited conception of the republican form of democratic government which this Commonwealth was established to secure and maintain and which the National Government is charged by the Federal Constitution (Art. IV, Sec. 4) to guarantee to every State. (Emphasis in original).

*Id.* 365 Pa. at 341–342, 75 A.2d at 470–71. *See also Commonwealth v. Fudeman, supra,* (concurring opinion by Jones, C.J.) *Commonwealth ex rel. Margiotti v. Orsini, supra.* (concurring opinion by Jones, J.)

In *Fudeman*, Chief Justice Jones found new support in the person of Justice Musmanno, who spoke out with typical vigor and eloquence stating:

It cannot be supported historically, statutorily, or jurisprudentially. There are several decisions of this Court which, from a standpoint of rote and poll-parrotism, warrant the present Majority in making the assertion it makes in this case, but the fact remains, nevertheless, that the Attorney General does not have and never did have the absolute power to decide for himself if, when, and to what extent he should take over the duties, functions and responsibilities of a District Attorney.

Within recent years the authority of the Attorney General has been overflowing the banks of constitutional channels until it threatens to inundate, smother, and choke local prosecuting authority. The time has come, and is indeed long past overdue, to bring the concept of the power of the Attorney General within its constitutional limitations. And the one to perform that job is this Court, because this Court has been mostly responsible for creating the fiction, the legend, and the absurdity that an appointed official with his office in Harrisburg, may at his pleasure take over the offices of district attorneys in 67 counties and run them to suit his own ideas of government, as well as his whim, caprice, and ambitions. Such a notion runs counter to every principle of American democracy where the power to govern stems from the people, and the people alone. In all the literature on the subject one cannot find any authority to justify the incredulous assumption that an appointed officer (the Attorney General) may displace, because of common law authorization, an officer elected by the people by mandate of the Constitution.

\*    \*    \*    \*    \*    \*

The Attorney General has tremendous powers but he is not, as the Majority Opinion would have us believe, omnipotent, ubiquitous, and omniscient in the entire legal realm of the State.

*Commonwealth v. Fudeman, supra,* 396 Pa. at 253–255, 152 A.2d at 437–438. *See generally, Id.,* 396 Pa. at 253–255, 152 A.2d at 437–448 (dissenting opinion by Musmanno, J).

The rule was further criticized in the majority opinion in *Packel v. Mirarchi, supra,* which sustained the Attorney General's supersession of the Philadelphia District Attorney based on the Attorney General's statutory authority. Therein the court noted:

[The] ruling was based not on the assumption such power was given statutorily, but rather on the premise

that such power "enveloped" attorney generals at common law and the Attorney General of Pennsylvania was "clothed" with the same power. This reasoning has been severely criticized. See Some Current Problems in Pennsylvania Law—Attorney General versus District Attorney, 99 U.Pa.L.Rev. 814, 826 (1951), and Note, The Common Law Power of State Attorneys General to Supersede Local Prosecutors, 60 Yale L.J. 559 (1951). Furthermore, Pennsylvania seems to be the only jurisdiction which has approved the supersession of a district attorney on the basis of common law powers. Cf, C.J.S. Attorney General § 5, supra; People v. Hopkins, [182 Misc. 313] 47 N.Y.S.2d 222 (1944); Kemp v. Stanley, 204 La. 110, 15 So.2d 1 (1943); In Re Watson, 293 Mich. 263, 291 N.W. 652 (1940); People v. Flynn, 375 Ill. 366, 31 N.E.2d 591 (1940).

Id. 458 Pa. at 605–606, 327 A.2d at 55.

Finally, in Commonwealth v. Schab, 477 Pa. 55, 383 A.2d 819 (1978), the tide was turned and the supreme court repudiated Minerd and its progeny. As stated by the court:

We no longer adhere to this view. Simply because the Attorney General had the common law power to replace his own deputies does not justify the conclusion that he now has the same right to supersede an elected District Attorney, an officer unknown to the common law. It would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, in the Attorney General. To countenance such a separation of accountability and control undermines self-government and promotes centralization, see Commonwealth v. Fudeman, 396 Pa. 236, 152 A.2d 428, 438–40 (1959) (Musmanno, J. dissenting), of law enforcement—precisely the approach rejected in Pennsylvania by statute in 1850 and constitutionally in 1874.

Id., 477 Pa. at 61, 383 A.2d at 822.

The Schab court, in addition to abolishing the Attorney General's common law authority to investigate and prose-

cute criminal cases, also reinterpreted Sections 904 and 907 of the Administrative Code of 1929, 71 P.S. §§ 294, 297, in an attempt to harmonize those sections. The court interpreted Section 904 to allow the Attorney General seeking to supersede a county district attorney to petition the president judge of the proper jurisdiction to allow supersession. The Attorney General must therefore "establish good cause for the supersession." *Id.*, 477 Pa. at 65, 383 A.2d at 824. However, the continued reliance of this aspect of *Schab* is suspect in light of the subsequent repeal of Sections 904 and 907 of the Administrative Code of 1929 by the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 164, § 503, 71 P.S. § 732–503, and the incorporation of more comprehensive procedures in the new act to account for the *Schab* decision.

Subsequent to *Schab*, we arrive again at the starting point of inquiry, that is, Art. 4, § 4.1 and the Commonwealth Attorneys Act. Having come full circle, we state as a conclusion that the short historical digression shows a continuing conflict in the courts and in the legislature over the respective spheres of authority of the Attorney General and the district attorneys. The Commonwealth asserts that by the inclusion of certain language in Art. 4, § 4.1, and in the Commonwealth Attorneys Act, it was intended to perpetuate this conflict. We cannot agree with this assertion.

We believe it is evident that both the courts and the legislature have repudiated the past. The courts did so by means of the decision in *Commonwealth v. Schab, supra;* the legislature by the repeal of the portions of the Administrative Code of 1929.

■ The only remaining source of authority which defines the scope of the Attorney General's power to investigate and prosecute criminal actions is the Commonwealth Attorneys Act. We conclude that it is the sole source of that power. Indeed, we find it indisputable that the legislature intended any different result. Pursuant to Senate Resolution No. 61, 1977, the Joint State Government Commission formed a Task Force to comprehensively study the office of

the elected Attorney General and to draft legislation to implement the constitutional amendment providing for that office. The Task Force executed these functions and drafted a proposed bill which, after some amendments not relevant herein, was enacted as the Commonwealth Attorneys Act.[8]

Our conclusion that the legislature intended a break with the past is supported by the Final Report issued by the Task Force, which states:

Underlying the legislative recommendations of the task force are five general concepts on which there was substantial consensus:

1. Legislation enacted by the General Assembly is the exclusive source of the powers and duties of the elected Attorney General pursuant to Article IV, Section 4.1, which provides in part that the Attorney General "... shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." (Footnote omitted).

JOINT STATE GOVERNMENT COMMISSION TASK FORCE ON THE OFFICE OF ELECTED ATTORNEY GENERAL FINAL REPORT at 4 (1978). It must be remembered that with the repeal of the relevant provisions of the Administrative Code of 1929, the Commonwealth Attorneys Act is the only legislation delineating the powers of the Attorney General. The Task force further stated:

4. The elected Attorney General must serve as the independent chief *law-enforcement* officer to investigate and, where appropriate, prosecute criminal charges of wrongdoing by State officials and employees and by persons engaged in widespread organized corruption. The del-

---

8. The proposed bill drafted by the Task Force was filed initially as S.B. 1595 and H.B. 2663 on September 11, 1978. It is not necessary for our present purpose to totally recount the legislative history of the Act; however, the relevant provisions of the proposed bill, Section 205, Criminal Prosecutions, and Section 206, Criminal Investigations, were substantially the same as those enacted as Sections 205 and 206 of the Commonwealth Attorneys Act. We note that amendments were made to Section 205(a)(4) and (8), and to Section 206(b). The amendments, however, do not affect our reasoning or our result.

icate balance between providing a vigorous statewide chief law-enforcement officer while not impinging upon the jurisdiction and duties of the constitutionally created office of county-elected district attorney led to careful consideration of the scope and implementation of the criminal jurisdiction of the elected Attorney General. (Emphasis in original).

These statements are convincing evidence of the legislative intent to limit the Attorney General's authority in the investigation and prosecution of criminal actions to those instances expressly set forth in the Commonwealth Attorneys Act. We are constrained to heed these statements in interpreting the Act. 1 Pa. C.S. § 1939; 1 Pa. C.S. § 1921(a), (c)(7). Therefore, we hold that the Attorney General can only investigate and prosecute criminal actions within the confines of the Commonwealth Attorneys Act. Having so concluded, we must reject the Commonwealth's attempted resurrection of the body of law which pre-existed Art. 4, § 4.1. If we might twist our prior analogy slightly, and equate the Office of Attorney General with the Phoenix, the latest incarnation has emerged into a world of changed and more limited circumstances; its powers having been bridled by the legislature. The focus of our inquiry must now shift to the question of whether the instant prosecution was authorized by the Commonwealth Attorneys Act.

Section 205 of the Commonwealth Attorneys Act, 71 P.S. § 732–205,[9] sets forth the scope of the Attorney General's

9. § 732–205. Criminal prosecutions.

(a) Prosecutions.—The Attorney General shall have the power to prosecute in any county criminal court the following cases:

(1) Criminal charges against State officials or employees affecting the performance of their public duties or the maintenance of the public trust and criminal charges against persons attempting to influence such State officials or employees or benefit from such influence or attempt to influence.

(2) Criminal charges involving corrupt organizations as provided for in 18 Pa.C.S. § 911 (relating to corrupt organizations).

(3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the

potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

(4) The Attorney General may petition the court having jurisdiction over any criminal proceeding to permit the Attorney General to supersede the district attorney in order to prosecute a criminal action or to institute criminal proceedings. Upon the filing of the petition, the president judge assigned shall hear the matter within 30 days after appointment and make a determination as to whether to allow supersession within 60 days after the hearing. The district attorney shall be given notice of the hearing and may appear and oppose the granting of the petition, Supersession shall be ordered if the Attorney General establishes by a preponderance of the evidence that the district attorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion.

(5) When the president judge in the district having jurisdiction of any criminal proceeding has reason to believe that the case is a proper one for the intervention of the Commonwealth, he shall request the Attorney General to represent the Commonwealth in the proceeding and to investigate charges and prosecute the defendant. If the Attorney General agrees that the case is a proper one for intervention, he shall file a petition with the court and proceed as provided in paragraph (4). If the Attorney General determines that the case is not a proper case for intervention, he shall notify the president judge accordingly.

(6) Criminal charges investigated by and referred to him by a Commonwealth agency arising out of enforcement provisions of the state charging the agency with a duty to enforce its provision.

(7) Indictments returned by an investigating grand jury obtained by the Attorney General.

(8) Criminal Charges arising out of activities of the State Medical Fraud Control Unit as authorized by Article XIV (relating to fraud and abuse control, act of June 13, 1967 (P.L. 31, No. 21), known as the "Public Welfare Code," [1] and the Federal law known as the "Medicare-medicaid Antifraud and Abuse Amendments." [2]

(b) Concurrent jurisdiction to prosecute.—The Attorney General shall have the concurrent prosecutorial jurisdiction with the district attorney for cases arising under subsection (a)(1), (2) and (6) and may refer to the district attorney with his consent any violation or alleged violation of the criminal laws of the Commonwealth which may come to his notice.

(c) Criminal appeals.—In any criminal action in which there is an appeal, the Attorney General may in his discretion, upon the request of the district attorney, prosecute the appeal; he may intervene in such other appeals as provided by law or rules of court.

(d) Powers when prosecuting.—Whenever the Attorney General presents a criminal action, or appeal, he may employ such special deputies as are necessary for that purpose, such deputies shall take the oath of office and be clothed with all the powers and subject to all the liabilities imposed by law upon district attorneys, including the power to sign informations or indictments. Whenever the Attorney General intervenes in a criminal action, the costs incurred as a result of the intervention shall be paid by the Commonwealth. (Footnotes omitted)

power to prosecute criminal actions. The Commonwealth contends that the instant prosecution is authorized by Section 205(a)(1), or in the alternative by Section 205(a)(2).

Under Section 205(a)(1), the Attorney General is authorized to prosecute criminal charges against "state officials or employees affecting the performance of their public duties," and against "persons attempting to influence such state officials or employees." The Commonwealth advances three grounds for prosecution under this subsection. First that the Attorney General can prosecute Carsia, an attorney, as a state official; second, that the Attorney General can prosecute Carsia for attempting to influence a district justice, a state official; and third, that the Attorney General can prosecute Carsia for attempting to bribe the two municipal police officers, who, it is asserted are state officials or employees. These assertions are without merit.

▇▇▇▇ In support of its first assertion, the Commonwealth directs our attention to 42 Pa.C.S. § 2521 which describes the "office of attorney-at-law," and Section 2522 describing the oath to be taken before entering the "office." The Commonwealth argues that these provisions establish attorneys-at-law as State officials. The Commonwealth further cites Pa. CONST. Art. 4 Sec. 6 in support of its assertion.[10] We refuse to subscribe to the Commonwealth's argument. Although there is no specific authority on this point, we note that an attorney is not a state officer so as to bring his actions within the purview of the Civil Rights Act, 42 U.S.C. § 1983. *Brown v. Joseph,* 463 F.2d 1046, (3d Cir.1972), *cert. denied,* 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973); *Steward v. Meeker,* 459 F.2d 669 (3d Cir.1972); *Habda v. Wysocker,* 458 F.2d 537 (3d Cir.1972). Moreover, we note that in *Commonwealth v. Garrison,* 478 Pa. 356,

10. § 6. Disqualification for offices of Governor, Lieutenant Governor and Attorney General.

No member of Congress or person holding any *office* (except of attorney-at-law or in the National Guard or in a reserve component of the armed forces of the United States) *under the United States or this Commonwealth shall* exercise the office of Governor, Lieutenant Governor or Attorney General. (Emphasis added).

386 A.2d 971 (1978), the court held that an attorney is not an "officer" for purposes of 17 P.S. § 2041, giving courts the power to punish its officers for official misconduct. We conclude that an attorney was not intended as a "State officer" under Section 205(a)(1) of the Commonwealth Attorneys Act. Therefore the present prosecution cannot be grounded on that basis.

The Commonwealth next argues that the prosecution falls within Section 205(a)(1) because Carsia was attempting to influence a district justice, who is a state officer. A district justice has been held to be an officer of the Commonwealth, that is, an officer of statewide jurisdiction, for the purposes of the Appellate Court Jurisdiction Act. *Collins v. Gessler,* 452 Pa. 471, 307 A.2d 892 (1973). However, the Commonwealth's assertion distorts the facts. There is no allegation that Carsia ever attempted to influence the district justice. His bribery attempt ·was directed toward the two police officers. Consequently, reliance on this assertion is likewise fruitless.

■ The Commonwealth finally argues that the prosecution is authorized because it involves an attempt to influence state officials or employees, the two police officers. In *Commonwealth v. Bausewine,* 354 Pa. 35, 46 A.2d 491 (1946), a police officer challenged his conviction of common law bribery on the ground that he should have been convicted under [then] section 303 of the Crimes Code, 18 P.S. § 4303, which prohibited bribery of "state officers, judges, jurors, etc." The court rejected the challenge stating:

A careful study of section 303, however, convinces us that it was the legislative intent to single out those officers directly responsible to the government of the Commonwealth of Pennsylvania in its statewide sense who prove unfaithful in the exercise of the sovereignty of the Commonwealth. It was not the intendment to include in this section such local public officer as a borough chief of police. In this connection, we agree with President Judge Baldrige that: "Section 300 * * * relates to a thing to be attained or influenced by a bribe. 'Vote, opinion,

verdict, award, judgment, decree or behavior' are specified. A chief of police has no official relation with any of those matters. Those who come within the provisions of that section are legislators, judges, jurors, etc., who make up the legislative and judicial branches of our government. They are the officers of the Commonwealth within the purview of the statute. Nothing is said in this section about municipal officers. Then we go further and examine sections 304 and 305, 18 P.S. §§ 304, 4305, dealing with a corrupt solicitation and the practice of corrupt solicitation of 'municipal officers' and 'public officers of the State or of any political subdivision thereof.' If the legislature had meant to embrace within section 303 municipal officers, it would have said so definitely as it did in sections 304 and 305." Therefore, this argument of defendant is without merit.

*Id.*, 354 Pa. at 37–38, 46 A.2d at 492. In reliance on *Bausewine*, we conclude that municipal police officers are likewise not state officials or employees. Consequently, we find no authorization for the Attorney General to prosecute the instant case under Section 205(a)(1).

The Commonwealth alternatively argues that prosecution is authorized under Section 205(a)(2) which empowers the Attorney General to prosecute "criminal charges involving corrupt organizations as provided for in 18 Pa.C.S. § 911 (relating to corrupt organizations)." The Attorney General and the district attorneys of the several counties shall have concurrent authority to institute criminal proceedings under the provisions of this section. It is indisputable that the Attorney General has the power to prosecute a defendant charged with corrupt organizations.

[9] The Commonwealth, however, has never charged the appellee, Carsia, with violating 18 Pa.C.S. § 911. It asserts however that by virtue of the offenses charged (*See* n. 1–4 *supra*), the predicates for such a prosecution have been established, and consequently, it would have this court hold that the Attorney General has the power to prosecute a criminal action wherein the offense of corrupt organizations

might conceivably have been charged. The Common-wealth's argument is insupportable.

■ The language of Section 205(a)(2) clearly and unam-biguously grants the Attorney General the power to engage in prosecutions under 18 Pa.C.S. § 911. However, this grant of authority must be limited to its express terms. It cannot be expanded upon by this court acting on the mere speculation of the Commonwealth that the present action was one which could have involved a violation of 18 Pa.C.S. § 911.

We note that not only was the appellee not charged with corrupt organizations, but that the affidavit of probable cause in support of the arrest warrant makes no mention of this possibility. Moreover, the Commonwealth did not raise this argument until after the court order dismissing the informations, in its petition for reconsideration. We note that even at that point, the Commonwealth did not move to amend the informations to include a charge of corrupt organizations.

We find no merit in the Commonwealth's argument that the prosecution below was sanctioned by the Common-wealth Attorneys Act.

The Commonwealth finally argues that the Common-wealth Attorneys Act authorized the investigation conduct-ed by BCI. We will not address this issue since it is superfluous to our decision herein. Both the lower court and this court have decided this case on the basis that the Attorney General lacked the authority to prosecute the action. The investigation by BCI is irrelevant.

■ We hold, therefore, that the information signed by the deputy attorney general is defective on its face because it was signed by a person who had no authority to prosecute the case. We recall the words of Justice Musmanno, who stated: "The signature might just as well have been that of a strolling tourist trying out his penmanship on a piece of paper in the courthouse...." *Commonwealth v. Fude-man, supra,* 396 Pa. at 255, 152 A.2d at 438. Consequent-

ly, dismissal of the informations was proper. The order of the lower court is affirmed.

Order affirmed.

SPAETH, President Judge, files concurring opinion.

WICKERSHAM, J., files dissenting statement.

SPAETH, President Judge, concurring:

I join the majority's opinion, which I admire, and write separately only to comment a bit more fully on why the order in question is final and therefore appealable.

Appellee argues that the order is interlocutory because, not only has the Commonwealth not been put "out of court", it is still in court, prosecuting appellee. The difficulty with this argument is that it rests upon too literal a reading of the term "out of court."

As we have explained,

... the phrase "out of court" must not be interpreted literally; it is not synonymous with "final." In *Commonwealth v. Orsatti*, 448 Pa. 72, 75–76, 292 A.2d 313, 315 (1972), the Supreme Court in refusing to quash an appeal, said: "[W]e do not mean to suggest that a final judgment on the original issue raised by the complaint could not have been awaited by the defendants or that, upon appealing from such final judgment, the action of the court below, . . . . could not then have been assigned for error. But, obviously, such a course would not have afforded expeditious procedure for the ultimate disposition of the entire controversy," *quoting Broido v. Kinneman*, 375 Pa. 568, 569, 101 A.2d 647, 648 (1954). *See also, Posternack v. American Casualty Co.*, 421 Pa. 21, 218 A.2d 350 (1966); *Pellegrine v. Home Ins. Co.*, 200 Pa.Superior Ct. 48, 186 A.2d 662 (1962). It is therefore plain that in deciding whether an order is "final," one must do more than ask only whether the appellant is "out of court;" one must also ask whether, even if the appellant is still in court, the order is in its "practical aspects," *Bell v.*

*Beneficial Consumer Discount,* [465 Pa. 225, 348 A.2d [734] 735 (1975)], sufficiently final to make it appealable. *Gordon v. Gordon,* 293 Pa.Super. 491, 499–500, 439 A.2d 683, 687 (1983) (en banc).

Thus, "[w]hether an order is final and appealable cannot necessarily be ascertained from the face of the decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications [,] ... [and] a finding of finality must be the result of a practical rather than a technical construction." *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975), *citing Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Consistent with this analysis, a variety of orders have been held to be final and appealable even though they did not literally put a litigant "out of court." *See, e.g., T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 337, 372 A.2d 721, 724 (1977) (where order dismissing complaint with prejudice did not put litigant out of court because counter-claim had been filed, order held final because it had "practical ramification [of] ... completely depriv[ing] the litigant of his day in court so far as his claim is concerned."); *Commonwealth v. Orsatti,* 448 Pa. 72, 76, 292 A.2d 313, 315 (1972) (where order dismissing preliminary objections with leave to amend complaint had practical effect of denying litigant an opportunity to litigate claim to damages, order held final because "as to the [money that Orsatti was precluded from claiming, he] was put out of court."); *Bell v. Beneficial Consumer Discount Co., supra* 465 Pa. at 229, 348 A.2d at 736 (order denying class certification possesses sufficiently practical aspects of finality to be appealable even though order may leave named plaintiff in court and does not alter cause of action.); *Freeze v. Donegal Mutual Insurance Co.,* 301 Pa.Super. 344, 447 A.2d 999 (1982) (en banc) (order denying estate ability to collect work-loss benefits under No-Fault Act, but allowing leave to amend complaint to seek other

benefits under Act, held final because estate was "out of court" as far as work-loss benefits were concerned); *Gordon v. Gordon, supra* (order denying wife's application to proceed under new Divorce Code held final, even though it left her free to pursue the action under old law, because practical effect of order was to put her out of court regarding claims allowable only under Code.)

Here, the Commonwealth, through the Office of the Attorney General, attempted to prosecute appellee under the authority of the Commonwealth Attorneys Act, 71 Pa.C.S. § 732–205(a)(1), (2). The trial court's order dismissing the information provides:

> AND NOW, TO WIT, this 1st day of December, 1982, after hearing, and on consideration of the defendant's petition, the information is dismissed, it appearing that the Office of the Attorney General of Pennsylvania does not have the power to investigate or prosecute the alleged criminal offense.

This order certainly puts the Commonwealth "out of court" regarding its claim of statutory authority under 71 Pa.C.S. 732–205(a)(1) and (2). Moreover, were we to hold the order to be interlocutory, the practical effect would be to deny the Commonwealth the opportunity to litigate the merits of its claim to such authority, for by the terms of the order, only a local district attorney may pursue this prosecution. *See Brennan v. General Accident Fire & Life Assurance Corp.*, 307 Pa.Super. 288, 291, 453 A.2d 356, 357 (1982) ("Sometimes an order will not literally put the appellant out of court but still it will be appealable because as a practical matter the appellant will be unable to present his claim.") Such a result would not further the underlying policy of the finality rule of preventing piecemeal litigation and promoting judicial economy, *see Gordon v. Gordon, supra,* for it would only force the Commonwealth to litigate this issue again.

Accordingly, since the Commonwealth is, for all practical purposes, put "out of court" by the trial court's order regarding its claim under the Commonwealth Attorneys

Act, I conclude that the order is final under Pa.R.A.P. 341(c).[1]

WICKERSHAM, Judge, dissenting:

I would reverse the lower court which granted a petition filed by appellee Bruce Carsia quashing the criminal information. As the Attorney General argued:

> The Attorney General, as chief law enforcement officer of the Commonwealth, had the authority to prosecute Bruce Carsia, an attorney at law, for attempting to bribe two police officers and fix a preliminary hearing. The prosecutorial and investigative powers of the Attorney General as determined by decisions of the Pennsylvania Supreme Court, are broad and vast. The lower court erred by concluding otherwise and by quashing the criminal informations filed by the Attorney General.
>
> The Attorney General was authorized to investigate and prosecute Carsia by virtue of the Commonwealth Attorneys Act. Carsia's actions of trying to fix a preliminary hearing was an attempt to influence or benefit from the influencing of a state official or employee. Additionally, Carsia's actions amount to a violation of 18 Pa.C.S. § 911 (corrupt organizations). Finally as a licensed attorney at law, Carsia was a state official as that term is defined in the Commonwealth Attorneys Act.

1. The cases appellant cites are not to the contrary. They simply stand for the proposition that when an order is not "in its 'practical aspects' sufficiently final to make it appealable," *Gordon v. Gordon, supra* 293 Pa.Super. at 500, 439 A.2d at 687, *citing Bell v. Beneficial Consumer Discount Co., supra,* because some other procedure enables the litigant to be heard on the merits, then the general finality rule will render the order unappealable. *See, e.g., Flanagan et al. v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288, 295 (1984) (order disqualifying counsel lacks "critical characteristics" that render pretrial order immediately appealable because, among other reasons, the claim "is in no danger of becoming moot upon conviction and sentence...."); *In Re Riggins,* 435 Pa. 321, 254 A.2d 616 (court quashes Commonwealth appeal from order discharging appellant for failure to make out prima facie case because Commonwealth could rearrest and therefore was not out of court); *Commonwealth v. Gore,* 279 Pa.Super. 622, 421 A.2d 372 (1980) (court holds order refusing Commonwealth motion to amend information not appealable because Commonwealth could nolle pros and commence new prosecution.)

Agents of the Attorney General's Bureau of Criminal Investigation are vested with full police power of investigation and arrest. Therefore, the investigation and subsequent arrest of Carsia by Agents of the Bureau of Criminal Investigation was lawful.

Carsia had no standing to challenge whether the Attorney General, the chief law enforcement officer of the Commonwealth has the authority to prosecute him. Such a challenge rests with the district attorney. Furthermore, the district attorney agreed that the Attorney General should investigate and prosecute the case *sub judice*.[1]

I agree.

1. Brief for Appellant at 8–9.